# United States Court of Appeals

*for the*

# Seventh Circuit

Case No. 24-3215

JACQUELINE STEVENS,

*Plaintiff-Appellant,*

– v. –

UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,

*Defendants-Appellees.*

ON APPEAL FROM AN ORDER ENTERED IN UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, CASE NO. 1:21-CV-02232

## CORRECTED OPENING BRIEF OF APPELLANT

DAVID L. CLEVELAND
LAW OFFICES OF DAVID CLEVELAND
*Attorney for Appellant*
1220 L Street, NW, Suite 100
Washington, DC 20005
(202) 812-8684
1949.david@gmail.com

CP COUNSEL PRESS   (800) 4-APPEAL • (379293)

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-3215

Short Caption: Stevens v. U.S. Immigration and Customs Enforcement

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

   [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

   Jacqueline Stevens

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
   Law Office of David Cleveland

(3)    If the party, amicus or intervenor is a corporation:

   i)    Identify all its parent corporations, if any; and

       n/a

   ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

       n/a

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   n/a

Attorney's Signature: _David L. Cleveland_    Date: March 12, 2025

Attorney's Printed Name: David L. Cleveland

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [✓]    No [ ]

Address: 1220 L Street NW # 100    Washington DC 20005

Phone Number: 202-812-8684    Fax Number: n/a

E-Mail Address: 1949.david@gmail.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF JURISDICTION ............................................................ 1

STATEMENT OF ISSUES ...................................................................... 1

STATEMENT OF THE CASE ................................................................... 1

    Background ........................................................................................ 2

    Schurkamp's description concerning Mr. Soto ............................... 8

    Schurkamp's description concerning Mr. Anfinson ...................... 9

    Schurkamp's description concerning Mr. Hurtado ...................... 9

SUMMARY OF THE ARGUMENT .......................................................... 13

ARGUMENT ........................................................................................ 14

    I.    The standard of review is de novo ...................................... 14

          The standards of Civil Rule 56 ............................................ 14

          The Freedom of Information Act vindicates
               significant rights ........................................................... 15

    II.   THE COURT BELOW ERRED BY NOT FAULTING
        ICE FOR USING INCONSISTENT SEARCH
        TERMS WITHOUT EXPLANATION .................................. 17

    III.  THE COURT BELOW ERRED BY NOT FAULTING
        ICE FOR SEARCHING IN DIFFERENT
        LOCATIONS WITHOUT EXPLANATION .......................... 20

    IV.  THE COURT BELOW ERRED BY FAILING TO
        REQUIRE ICE TO SHOW ITS SEARCH WAS
        REASONABLY CALCULATED TO UNCOVER ALL
        DOCUMENTS ................................................................. 24

    V.   THE COURT BELOW ERRED BY FAILING TO
        FAULT THE DECLARATION OF MS SCHURKAMP ........ 32

VI.  THE COURT BELOW ERRED BY PRESUMING
     THE AGENCY SEARCHED IN "GOOD FAITH" ............... 34

VII.  COURTS SHOULD NOT DEFER TO AGENCY
      INTERPRETATIONS OF STATUTES .................................. 42

VIII. COURTS MAY NOT ADD PROVISIONS TO
      UNAMBIGUOUS STATUTES ............................................. 45

CONCLUSION ........................................................................ 49

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Aguiar v. Drug Enforcement Administration,*
     865 F.3d 730 (D.C. Cir., 2017) ........................................ 28

*American Immigration Council v. EOIR,*
     No. 23-1952 (RC), 2025 WL 506572 (D.D.C. Feb. 14, 2025) ..... 25-26

*Austin Sanctuary Network v. ICE,*
     No. 20-cv-1686, 2022 WL 4356732
     (S.D.N.Y. Sept. 19, 2022) ........................................ *passim*

*Becker v. I.R.S.,*
     34 F.3d 398 (7th Cir. 1994) ........................................ 14

*Borowski v. U.S. Customs and Border Protection,*
     733 F. Supp. 3d 171 (W.D.N.Y. 2024) ................................ 26, 28, 30

*Bostock v. Clayton County,*
     140 S. Ct. 1731 (2020) ........................................ 45

*Brennan Ctr. v. ICE,*
     571 F. Supp. 3d 237 (S.D.N.Y. 2021) ................................ 21

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council,*
     467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) ........... 42-43

*Citizens Comm'n on Human Rights v. Food and Drug Admin.,*
     45 F.3d 1328 ........................................ 5

*City and Cnty. of San Francisco, California v.
     Environmental Protection Agency,*
     2025 WL 676441 (U.S.S. Ct., March 4, 2025) ................................ 35

*City of Chicago v. Envtl. Def. Fund,*
     511 U.S. 328 (1994) ........................................ 35

*Consolidation Coal Company v.
     Director, Office of Workers' Compensation Programs,*
     No. 24-1329, 2025 WL 519631 (7th Cir. Feb. 18, 2025) ................ 35

*Elliott v. U.S. Dep't of Agric.,*
    596 F.3d 842 (D.C. Cir. 2010) .......................................................... 46

*Empower Oversight Whistleblowers & Research v.*
    *National Institutes of Health,*
    122 F.4th 92 (4th Cir. 2024)................................................... 25, 29

*Ethyl Corp. v. EPA,*
    25 F.3d 1241 (4th Cir. 1994) .......................................................... 16

*Evans v. Federal Bureau of Prisons,*
    951 F.3d 578 (D.C. Cir. 2020) ........................................................ 14

*Fed. Bureau of Investigations v. Abramson,*
    456 U.S. 615 (1982) ................................................................15-16

*Ghinis v. United States Citizenship and Immigration Services,*
    No. 21-cv-554, 2023 WL 2598846 (M.D. Fla., Mar. 22, 2023) ....... 28

*Goland v. CIA,*
    607 F.2d 339 (D.C. Cir. 1978) ............................................ 40, 41, 42

*Ground Saucer Watch, Inc. v. CIA,*
    692 F.2d 770 (D.C. Cir. 1981) ............................................ 40, 41, 42

*Hart v. FBI,*
    1996 WL 403016, 91 F.3d 146 (7th Cir. July 16, 1996) ............ 4, 24

*Henson v. Dep't of HHS,*
    892 F.3d 868 (7th Cir. 2018) ......................................................... 25

*Herman & MacLean v. Huddleston,*
    103 S. Ct. 683, 459 U.S. 375 (U.S. 1983)....................................... 37

*Human Rights Defense Center v. U.S. Park Police,*
    126 F.4th 708 (D.C. Cir. 2025)...................................................... 44

*Leopold v. Department of Defense,*
    No. 14-30 (RDM) 2024 WL 4332566
    (D.D.C., Sept. 27, 2024)........................................................ 26, 28

*Logan v. City of Chicago,*
    4 F.4th 529 (7th Cir. 2021)........................................................... 14

*Loper Bright Enters. v. Raimondo, Sec'y of Commerce,*
603 U.S. 369, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024) ... 42, 43, 44

*Louise Trauma Center v.*
*U.S. Immigration and Customs Enforcement,*
No. 20-cv-3787 (TSC) 2025 WL 637369
(D.D.C., Feb. 27, 2025) ......................................................... *passim*

*McGirt v. Oklahoma,*
140 S. Ct. 2452 (2020) ...................................................... 46, 47

*Miccosukee Tribe of Indians of Fla. v. United States,*
516 F.3d 1235 (11th Cir. 2008) ...................................... 15

*Miller v. Dep't of State,*
779 F.2d 1378 (8th Cir. 1985) ........................................ 15

*Milner v. Dep't of Navy,*
562 U.S. 562 (2011) ........................................................ 46

*Morley v. CIA,*
508 F.3d 1108 (D.C. Cir. 2007) ...................................... 15

*Nat'l Day Laborer Org. Network v.*
*U.S. Immigration & Customs Enf't Agency,*
877 F. Supp. 2d 87 (S.D.N.Y. 2012) ............................. 10-11

*New Orleans Workers Ctr. v. U.S. Immigr. & Customs Serv.,*
373 F. Supp. 3d 16 (D.D.C. 2019) ................................. 18, 19

*Oglesby v. Dep't of Army,*
920 F.2d 57 (D.C.Cir. 1990) ........................................... 26, 27, 42

*Organized Communities Against Deportations, Immigrant*
*Defense Project v. United States Immigration and Customs*
*Enforcement,*
No. 21-cv-2519, 2024 WL 2053123 (N.D. Ill., May 8, 2024) ......... 27

*Patterson v. I.R.S,*
56 F.3d 832 (7th Cir. 1995) ............................................ 14

*Pharmaceutical Coalition for Patient Access v. United States,*
126 F.4th 947 (4th Cir. 2025) ......................................... 47

*Pond v. United States*,
   69 F.4th 155 (4th Cir. 2023)..........................................39

*Price v. United States DOJ*,
   865 F.3d 676 (D.C. Cir. 2017) .....................................15

*Project South v. ICE*,
   No. 21-cv-8440, 2024 WL 1116164
   (S.D.N.Y. Mar. 12, 2024) .................................20, 22, 31

*Rein v. U.S. Patent & Trademark Office*,
   553 F.3d 353 (4th Cir. 2009) .......................................15

*Reporters Committee for Freedom of Press v.
   Federal Bureau of Investigation*,
   877 F.3d 399 (D.C. Cir., 2017) .....................................26

*Rubman v. U.S. Citizenship & Immigr. Servs.*,
   800 F.3d 381 (7th Cir. 2015) .................................*passim*

*SafeCard Servs., Inc. v. SEC*,
   926 F.2d 1197 (D.C. Cir., 1991) ...............................39-40

*Shapiro v. United States Department of Justice*,
   40 F.4th 609 (D.C. Cir., 2022)......................................26

*Shteynshlyuger v. Centers for Medicare and Medicaid Services*,
   698 F. Supp. 3d 82 (D.D.C., 2023) ...............................28

*Stevens v. U.S. Dep't of State*,
   20 F.4th 337 (7th Cir. 2021).....................................34, 39

*Stevens v. United States Department of Health and Human
   Services*,
   No. 22-cv-5072 (MFK) 2025 WL 213734
   (N.D. Ill., Jan. 16, 2025).........................................*passim*

*Stevens v. United States Department of Homeland Security*,
   No. 20-cv-02725, 2025 WL 416766 (MJR) ...............18, 25

*Tushnet v. U.S. Immigrant. & Customs Enfant*,
   246 F. Supp. 3d 422 (D.D.C. 2017) ..............................19

*Urban Air Initiative, Inc. v. Environmental Protection Agency*,
   271 F. Supp. 3d 241 (D.D.C., 2017) ............................28

*Weisberg v. U.S. Dept. of Justice,*
  627 F.2d 365 (D.C. Cir., 1980) ...................................... 28

*Zemansky v. E.P.A.,*
  767 F.2d 569 (9th Cir. 1985) ........................................... 5

## Statutes & Other Authorities:

5 U.S.C. § 552(a)(2)(E) .......................................................... 36

5 U.S.C. § 552(a)(3)(B) .......................................................... 36

5 U.S.C. § 552(a)(3)(C) ................................... 35, 36, 44, 45

5 U.S.C. § 552(a)(4)(A)(viii) .............................................. 38

5 U.S.C. § 552(a)(4)(A)(viii)(II)(bb) ................................. 38

5 U.S.C. § 552(a)(4)(B) ............................... 1, 35, 37, 45

5 U.S.C. § 552(b) .................................................................. 36

5 U.S.C. § 552(b)(9) ............................................................ 36

11 U.S.C. § 362 ..................................................................... 39

11 U.S.C. § 362(c)(3)(C) ..................................................... 39

18 U.S.C. § 3142(e)(3) ......................................................... 39

26 U.S.C. § 7502 ................................................................... 39

26 U.S.C. § 7502(a) .............................................................. 39

28 U.S.C. § 1331 .................................................................... 1

30 U.S.C. § 921(c)(4) ........................................................... 39

33 U.S.C. § 920 ..................................................................... 38

**STATEMENT OF JURISDICTION**

The District Court had jurisdiction pursuant to 5 U.S.C. §§ 552(a) (4) (B) and 28 U.S.C. § 1331. The District Court issued an Order and Judgment on October 7, 2024. That Order dismissed the Complaint, and is the decision being appealed. On December 5, 2024, Jacqueline Stevens filed a timely notice of appeal to this Court.

**STATEMENT OF ISSUES**

1. When an agency receives similar requests, must it search using similar terms? If it uses different terms, must it explain why?

2. When an agency receives similar requests, must it search in similar locations? If it searches in different locations, must it explain why?

3. If a statute does not obligate a court to grant a "good faith" presumption to an agency declaration, may a court grant one?

**STATEMENT OF THE CASE**

Professor Jacqueline Stevens, Plaintiff-Appellant, originally made 14 FOIA requests. In this appeal, she only makes arguments concerning the first three.

Three men, each of whom had been born outside of the United States, who had alien numbers, and who had been detained, made

similar FOIA requests. For one request, the agency used two search terms; for the other requests, the agency used five search terms. The agency did not explain why.

The agency also searched in inconsistent ways. For one request, the agency searched in one location; for another, the agency searched two locations; for another, the agency searched four locations. The agency did not explain these inconsistencies.

## Background

### *Records about Mr. Soto*

In 2017, Professor Stevens submitted a FOIA request to ICE, seeking records concerning Mr. Soto. He was born outside of the United States, had an alien number, and had been detained by ICE. Ms. Stevens requested many items, ECF # 37, at 49-50, including:

-correspondence with Citizenship and Immigration Services
- records of purchases at the commissary
-records associated with his custody in Texas state jails pending his transfer into ICE custody

Inside ICE is an office called ERO. Inside ERO, a search was conducted using these two search terms: Mr. Soto's name and his alien number. Inside ERO, a search was conducted at one location: its

Immigration and Enforcement Operational Records System Alien Removal Module, (EARM") ECF # 30, at 3.

*Records about Mr. Anfinson*

In 2018, Ms. Stevens submitted a FOIA request to ICE, seeking records concerning Mr. Anfinson, who had been born outside of the United States, who had an alien number, and who had been detained. She requested many items,

ECF # 31, at 46:

> -correspondence concerning findings of U.S. citizenship
> -Commissary account data from custody.
> -records of grievances
> -Screen shots for interfaces to databases including PLAnet

Inside ERO, a search was conducted using five search terms: Mr. Anfinson's name, alien number, date of birth, country of birth, and alias. Inside ERO, a search was conducted at two locations:   EARM, and also the Central Index System ("CIS"). ECF # 30, at 4.

*Records about Mr. Hurtado*

In 2019, Ms. Stevens submitted a FOIA request to ICE, seeking records concerning Mr. Hurtado, another man born outside of the United States, who had an alien number, and who had been detained.

Stevens requested many items, ECF # 31 at 57, including:

-correspondence with USCIS
-records of grievances filed, concerning county jails or private prisons
 -Screen shots for interfaces including but not limited to PLAnet

ERO used five search terms: Hurtado's name, date of birth, country of birth, alias, and alien number. ERO searched four locations: EARM, the Central Index System, Outlook, and a booking system called the EID Arrest Guide for Law Enforcement, ("EAGLE"), to retrieve information from the Enforcement Integrated Database. ECF #30, at 4.

= = = = = =

The agency furnished a declaration from Ms. Schurkamp. She does not explain why different search terms were used. She does not explain why the agency searched in one location for Mr. Soto, in two locations for Mr. Anfinson, and in four locations for Mr. Hurtado.

MOTION FOR SUMMARY JUDGMENT FILED BY ICE

In June 2022, ICE filed a Motion for Summary Judgment, ECF #30. ICE cited *Hart v. FBI*, 1996 WL 403016, \*2, 91 F.3d 146 (7th Cir. July 16, 1996) which noted that when an agency conducts a search, it must detail methods and procedures that demonstrate that its search was "reasonably calculated to uncover *all* relevant documents."

[emphasis added]( quoting *Citizens Comm'n on Human Rights,* 45 F.3d at 1328 (quoting *Zemansky v. E.P.A.,* 767 F.2d 569, 571 (9th Cir.1985)).

ICE described the searches, and the search terms, for Mr. Soto, Mr. Anfinson, and Mr. Hurtado. ECF # 30, pages 3-5. ICE did not comment upon the different search locations and different search terms used. ICE referred to its Statement of Material Facts, ECF # 31, which in turn referred to the declaration of an agency employee, Ms. Lynnea Schurkamp.

SCHURKAMP DECLARATION OF JUNE 2022

The Declaration of Ms. Lynnea Schurkamp begins at page 25 of 238, of ECF #31.

She states that there is an "Intake Team," which conducts searches, and a "Litigation Team," which conducts searches. She supervises both teams. *Id.* at paragraph 2. She does not explain which of these teams conducted any of the three searches in this case.

When the ICE FOIA Office receives a request, "it" will "identify which program offices, based on their experience and knowledge of ICE's program offices, within ICE are reasonably likely to possess records responsive to that request,.." ¶ 11.

Each program office has a Point of Contact (POC). The ICE FOIA Office sends the request to the POC inside each program office. The POC, using his "judgment," will then forward the request to individuals and component offices "that they believe are reasonably likely to have responsive records." *Id.*

ICE employees maintain records in different ways. Program offices use "various" systems. Some offices have shared drives. Some employees store records on their individual computers. ¶12.

All ICE employees "have access to email. ICE uses the Microsoft Outlook email system." ¶ 13.

"Each ICE employee stores his/her files in the way that works best for that particular employee." ¶ 13.

¶ 19 states:

19. Upon litigation review, the ICE FOIA Office determined that because of the subject matter of the FOIA requests, there were only four (4) ICE offices that were reasonably likely to have records responsive to Plaintiff's request. Enforcement Removal Operations ("ERO") was the office reasonably likely to have records related to FOIA Requests Nos. 1-3.

Requests #1, 2, and 3, were the requests of Mr. Soto, Anfinson, and Hurtado.

At page 32 of 238, Ms. Schurkamp states that ERO has "seven headquarters divisions and 24 Field Offices." She does not say if any of the headquarters divisions were searched, or if they weren't. She does not say if any of the Field Offices were searched, or if they weren't. She did not describe the component offices of ERO. She did not describe the databases and systems available inside ERO.

When ERO receives a request, the request is sent to the "primary POC" who is a Unit Chief. The Chief forwards the request to individuals and component offices, for them, to use their "judgment," to search where records "would be reasonably likely" to be. Paragraph 19, at page 32 of 238. "The employees exercise discretion, based on their operational knowledge and subject matter expertise." *Id.*

We are not informed whether the requests of Mr. Soto, Anfinson, and Hurtado were sent to the same Unit Chief, or if they were not. We are not informed if the Chief forwarded the requests to "individuals," or if he didn't.

Recall that each ICE employee stores records according to what "works best for that particular employee." Paragraph 13. Recall that program offices use "various" systems. Paragraph 12. How does the

Unit Chief know what records are held by which employees and which offices? We are not told. Ms. Schurkamp does not claim that *she* knows. If Ms. Schurkamp does not know how records are kept, she is not in a position to evaluate a search done by an un-named, other person.

The individuals search, and provide their results to the Unit Chief. We are not informed if the Chief reviewed the collected records in any manner: i.e., did he review for consistency of search terms and locations, or not? Did he review for thoroughness, or not? At any rate, the Chief provides the records to the ICE FOIA Office. "The ICE FOIA Office then reviews the collected records for responsiveness." *Id.*

That Office does not claim to review the search terms, nor the search locations done by the "employees." That office relies upon the Unit Chief, who in turn relied upon "employees."

**Schurkamp's description concerning Mr. Soto**

Ms. Schurkamp describes the search concerning Mr. Soto at page 36 of 238, She states at Paragraph 22 that ERO "conducted a routine search per IDU standard operating procedures." She does not describe what a "routine" search is, or how she knows that such a search was

done. She does not state what the "standard" procedures are, or how she knows those procedures were followed.

She states: "The search was conducted using the detained person's name and alien number. ERO searched EARM."

**Schurkamp's description concerning Mr. Anfinson**

Ms. Schurkamp describes the search concerning Mr. Anfinson at page 33 of 238. She states at Paragraph 20 that ERO "conducted a routine search per IDU standard operating procedures." She does not describe what a "routine" search is, or how she knows that such a search was done. She does not state what the "standard" procedures are, or how she knows those procedures were followed.

She states that ERO searched EARM, and "also the Central Index System (CIS). Page 34.

She states: "The search was conducted using the detained person's name, date of birth, country of birth, alias, and alien number." Page 33.

**Schurkamp's description concerning Mr. Hurtado**

Ms. Schurkamp describes the search concerning Mr. Hurtado at page 34 of 238. She states at Paragraph 21 that ERO "conducted a routine search per IDU standard operating procedures." She does not

describe what a "routine" search is, or how she knows that such a search was done. She does not state what the "standard" procedures are, or how she knows those procedures were followed.

She states that ERO searched EARM, and CIS. Page 35.

She states that ERO searched "Outlook." Page 35.

She states that ERO "used the booking application called the EID Arrest Guide for Law Enforcement ("EAGLE") to retrieve information from Enforcement Integrated Database (EID)." Page 35.

She states: "The search was conducted using the detained person's name, date of birth, country of birth, alias, and alien number." Page 35.

= = =

Ms. Schurkamp did not comment upon the different search terms used, nor upon the different locations that were searched.

RESPONSE OF MS. STEVENS IN AUGUST 2022

Ms. Stevens responded to the ICE Motion for Summary Judgment in August 2022. ECF # 36. She noted that an agency bears the burden to "show beyond material doubt that it has conducted a search reasonably calculated to uncover *all* relevant documents." *Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 877

F. Supp. 2d 87, 95 (S.D.N.Y. 2012) (citation omitted, and emphasis added).

Ms. Stevens noted that the search locations for Soto, Anfinson, and Hurtado were inconsistent. ECF # 36 at 3-4.

ICE REPLY

ECF # 39 is the Reply of ICE. The agency noted that the searches concerning the three requests were inconsistent, but claimed at page 6 of 15: "[N]othing requires an agency to search every existing database in response to every FOIA request; ICE directs the employees who are tasked with searching for responsive records to search the systems that *in their judgment* are reasonably likely to contain them." [emphasis in the original]

The ICE reply admits that un-named employees, using their own "judgments," conducted searches directed by an un-known Unit Chief. The Chief then sends records to Ms. Schurkamp. She does not claim to know what the Unit Chief did; the Unit Chief does not claim to know what various employees did.

**Memorandum Opinion** [October 7, 2024]

The decision of the district court below is published at 2024 WL 4433709.

The district court below found that the searches of ICE were adequate, citing *Rubman v. U.S. Citizenship & Immigr. Servs.* 800 F.3d 381, 387 (7th Cir. 2015).  The district court noted,  24 WL 4433709 at *6, that the *Rubman* court required that agency affidavits "must...aver that all files likely to contain responsive records were searched." [800 F.3d at 387]

The district court did not find that the agency in this case had made such an averment.

The district court noted that doubts about the adequacy of a search could be raised "if there are positive indications of overlooked materials," citing *Rubman,* 800 F.3d at 387.  If so, summary judgment in favor of the agency is inappropriate.

The court below discussed the requests of Soto, Anfinson, and Hurtado, one by one. The court below recited the various search terms, but did not otherwise comment upon the variance.

The court below was aware of the variety of search locations, and commented at note 10. The court said "...we must take in good faith ICE's declaration that employees searched 'based on their knowledge of the way they routinely keep records.'" The court further explained that "The question at summary judgment is not based on the uniformity of the searches or whether the agency *might* have additional, unidentified responsive documents… Instead, the Court "need only determine whether  the search itself was performed reasonably and in good faith. ICE has met this burden." [emphasis in original; cleaned up]

## SUMMARY OF THE ARGUMENT

An agency that uses different search terms for similar requests is not conducting a reasonable search. An agency that searches in different locations, for similar requests, without explanation, is not conducting a reasonable search.  The FOIA statute does not grant a presumption in favor of the agency. The statute instead affirmatively states the agency has the "burden" to explain its action. The Court below erred by ruling that agency search affidavits carry a presumption of "good faith." Granting that presumption alleviates the burden

imposed by the statute. Courts are not permitted to add terms to a statute.

## ARGUMENT

### I.  The standard of review is de novo

This Court reviews de novo a district court's grant of summary judgment in a FOIA action. *Becker v. I.R.S.*, 34 F.3d 398, 405 (7th Cir. 1994).

### The standards of Civil Rule 56

In a Rule 56 adjudication in the FOIA context, the burden is on the agency –not on the requester–to establish the adequacy of the search. *Patterson v. I.R.S*, 56 F.3d 832, 840 (7th Cir. 1995).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). An agency must establish "beyond factual dispute" that it met its burdens. *Evans v. Federal Bureau of Prisons,* 951 F.3d 578, 584 (D.C.Cir. 2020).

Circuit courts across the country have stated that agencies must demonstrate adequacy of the search "beyond material doubt" or "beyond a material doubt." See, e.g., *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1248 (11th Cir. 2008); *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007); *Miller v. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985).

## The Freedom of Information Act vindicates significant rights

There is a "strong preference for disclosure" in the FOIA. *Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 375 (4th Cir. 2009). FOIA vindicates significant rights. *Price v. United States DOJ,* 865 F.3d 676, 682 (D.C. Cir. 2017) noted that FOIA "in some cases, is the only vehicle" for keeping prosecutors honest. FOIA results led to the release of a man sentenced to 19.5 years' imprisonment, the vacating the conviction of a man sentenced to sixty years' imprisonment and to the exoneration of two men who had spent decades on death row. *Id.* at 682.

In enacting FOIA, Congress created "a policy of broad disclosure of Government documents in order to ensure an informed citizenry, vital to a functioning democratic society." *Fed. Bureau of Investigations v.*

*Abramson*, 456 U.S. 615, 621 (1982) (internal quotation marks omitted); *see also Ethyl Corp. v. EPA*, 25 F.3d 1241, 1245 (4th Cir. 1994) (FOIA "was enacted to maintain an open government and to ensure the existence of an informed citizenry."). To that end, FOIA "is to be construed broadly to provide information to the public in accordance with its purposes." *Ethyl Corp.*, 25 F.3d at 1245

The *New York Times* noted the importance of the Freedom of Information Act in its editorial published on May 12, 2020:

> Ignoring Freedom of Information Act cases during the crisis damages democracy…FOIA requests have yielded insights into the long-running war in Afghanistan, fraud in the Medicare system and Google's potentially monopolistic practices. And they have served the public in more mundane matters, like the placement of red-light cameras or the proceedings of the local permitting board.

FOIA was enacted because the government was keeping too many secrets. The importance of the FOIA in uncovering unlawful actions is well-recognized and inconsistent with granting a presumption of good faith to the government.

## II. THE COURT BELOW ERRED BY NOT FAULTING ICE FOR USING INCONSISTENT SEARCH TERMS WITHOUT EXPLANATION

Three foreign-born men were detained by ICE. Each submitted a similar FOIA request. However, for Mr. Soto, the agency searched, using two terms: his name and alien number. ECF # 30, at 3. For Mr. Anfinson and Mr. Hurtado, the agency used five search terms: name, date of birth, country of birth, alias, and alien number. ECF # 30, at 4.

The agency did not explain this difference. The district court below did not comment upon this difference.

An agency search must be logical, methodical, and consistent. The agency claimed for each search, that ERO "conducted a routine search per IDU standard operating procedures." Ms. Schurkamp used this phrase for the search of Mr. Soto [Paragraph 22 of her Declaration, ECF #31]; for the search of Mr. Anfinson [Paragraph 20]; and for the search of Mr. Hurtado [Paragraph 19].

Ms. Schurkamp does not describe the "standard operating procedures." She does not explain how using different search terms is in accord with "standard" procedures.

The search terms used here were not "routine," and do not show "standard procedures." The searches here violate ICE's own standards.

Other courts have criticized agencies for using inconsistent search terms. For example, in *Stevens v. United States Department of Homeland Security, No.* 20-cv-02725, 2025 WL 416766 at *5 (MJR) (N.D.Ill., Feb. 6, 2025) there were identical requests for medical records. One request went to the Chicago office of ERO, another went to the New York City office of ERO. The Chicago office, using just a few terms, found no records. The New York office used more terms, and found records. The court ordered the Chicago office to search again, using more terms.

For another example, see *Louise Trauma Center v. U.S. Immigration and Customs Enforcement,* No. 20-cv-3787 (TSC) 2025 WL 637369 (D.D.C., Feb. 27, 2025) where identical requests were sent to two Offices of Chief Counsel, inside ICE. One request went to the Office of Chief Counsel in Baltimore MD; the other went to the Office of Chief Counsel in Arlington VA. Different search terms were used, without explanation. The Court found that the agency had failed

"to justify discrepancies in search terms and methodology between
the field offices. *New Orleans Workers Ctr. v. U.S. Immigr. & Customs
Serv.* 373 F. Supp. 3d 16, 46-47 (D.D.C. 2019) FOIA does not mandate

uniform searches across different agency offices, but it does require reasonable explanations for variances in scope and methodology when searching for similar records from similar offices.*See New Orleans Workers',* 373 F. Supp. 3d at 47 ("[D]efendant's declarations are also insufficient because the defendant failed to explain the wide variance in the search terms used by custodians and offices");

2025 WL 637369, at 5.

The court also cited *Tushnet v. U.S. Immigrant.& Customs Enfant,* 246 F. Supp. 3d 422, 435 (D.D.C. 2017) "ICE's declarations fall short of explaining why such disparate searches were reasonable for particular offices.") 2025 WL 637369, at *5.

In *Tushnet,* the request was sent to 26 field offices. "The result was widely divergent searches, with several offices using one or two search terms, and others conducting more comprehensive searches using 15 or more terms.' 246 F.Supp.3d at 434. ICE did not explain "why such disparate searches were reasonable for particular offices." *Id.* at 435. "The wide and unexplained variances in the field offices' search parameters" violates the FOIA.

ICE was criticized for using different search terms in *Austin Sanctuary Network v. ICE,* No. 20-cv-1686, 2022 WL 4356732 (S.D.N.Y. Sept. 19, 2022). In that case, ICE searched within three divisions of ERO. Several individuals, whose names are provided, including three

Associate Legal Advisors, conducted searches, in different locations, using different terms. "ICE has provided no explanation whatsoever for the disparities..including..why some employees used a relatively large number of search terms while others-sometimes within the same office and holding the same position- used just one search term." *Id.* at *12. It is unreasonable if an agency "for no discernable reason, searched different data sets using different search terms, even within the same bureau or office." *Id.* at *13 [cleaned up].

ICE was criticized yet again for using different search terms in *Project South v. ICE,* No. 21-cv-8440, 2024 WL 1116164. *5 (S.D.N.Y. Mar. 12, 2024). ("A disparity between search terms used by various sections indicates that the search was inadequate.")

## III. THE COURT BELOW ERRED BY NOT FAULTING ICE FOR SEARCHING IN DIFFERENT LOCATIONS WITHOUT EXPLANATION

Three detained men made similar requests. However, for Mr. Soto, only EARM was searched. For Mr. Anfinson, EARM and the Central Index System (CIS) were searched. For Mr. Hurtado, EARM, CIS, Outlook, and EAGLE were searched.

Ms. Schurkamp provides no explanation for these differences. She claimed that the agency "conducted a routine search per IDU standard operating procedures." She does not explain why a "routine" and "standard" procedure would result in different locations being searched for each person.

In ECF # 39, at 6, the agency defended the inconsistency by stating that each employee can use his own "judgment" as to where to search. However, employees also must be methodical and consistent. If they are not, they should explain why not.

ICE was criticized for unexplained inconsistent searches in *Austin Sanctuary Network v. ICE,* No. 20-cv-1686, 2022 WL 4356732 (S.D.N.Y. Sept. 19, 2022). In that case, "some employees looked in shared drives and others did not." *Id.* at *12.

"ICE's statement that the disparities are a function of the judgment of individual ICE employees as to what places to search and what terms were reasonably likely to retrieve responsive records 'is of no use to the Court." *Id.* at *13 [Quoting *Brennan Ctr. v. ICE,* 571 F. Supp. 3d 237, 246 (S.D.N.Y. 2021)

ICE's argument requires the Court to take it on faith that each of the few ICE employees charged with searching for responsive records

was fully committed to identifying the records that would fall within the FOIA Request and was fully competent to determine the search terms to use (and the locations to search) to locate not only the records that they authored but also the records that they received and whose language they did not choose.

*Id.* at *12.

*Similar FOIA requests should result in similar searches*

Ms. Schurkamp does not explain why the Soto, Anfinson, and Hurtado requests resulted in searches in widely different locations.

ICE was criticized again for using different search locations in *Project South v. ICE,* No. 21-cv-8440, 2024 WL 1116164. (S.D.N.Y. Mar. 12, 2024). In that case, ICE described six divisions inside ERO, all of which conducted searches. Some custodians searched their own emails, some searched the shared drive. *Id.* at 6. But, ICE was "silent as to why" there was this difference. Therefore, the Court determined that the search was not reasonable.

Other courts have criticized agencies for such inconsistencies. For example, in *Louise Trauma Center v. U.S. Immigration and Customs Enforcement,* No. 20-cv-3787 (TSC) 2025 WL 637369 (D.D.C., Feb. 27, 2025) the identical request was sent to two similar offices of ICE. At the Baltimore office, there was a search of the Chief Counsel's email and

"the office's SharePoint website." At the Arlington office, the Deputy

searched "her computer and her Outlook email." *Id.* at *3. The Court

criticized the declarations of the agency for failing "to justify

discrepancies in search terms and methodology between the field

offices." *Id.* at *5. Why did different people search in different places?

The agency did not explain.

At *5, the Court stated:

Defendants' declarations do not explain why Baltimore and
Arlington offices took noticeably different approaches to identifying
similar records. Defs.' SOF Resp. at 6–7. It is unclear, for example, why
only the Baltimore office searched a SharePoint site, whether the
Arlington office uses a SharePoint site or comparable system, whether
the offices used the same search terms, and why different search terms
were used to search different systems.

*The agency does not explain why it did not search Homeland
Security Investigations and the Office of the Principal Legal Advisor*

In *Stevens v. United States Department of Health and Human

Services*, No. 22-cv-5072 (MFK) 2025 WL 213734, at *4 (N.D.Ill.,Jan. 16,

2025) three noncitizens submitted FOIA requests, seeking, among other

things, records of grievances, and commissary account data. ICE

searched ERO, and also two more locations: Homeland Security

Investigations and the Office of the Principal Legal Advisor (OPLA).

In the instant case, Mr. Soto sought "records of purchases at the commissary," Mr. Anfinson sought "Commissary account data from custody" and "records of grievances;" and that Mr. Hurtado sought "records of grievances." So, ICE should have also searched Homeland Security Investigations and in the Office of the Principal Legal Advisor (OPLA). At the very least, Ms. Schurkamp should have explained why those offices were not searched.

## IV. THE COURT BELOW ERRED BY FAILING TO REQUIRE ICE TO SHOW ITS SEARCH WAS REASONABLY CALCULATED TO UNCOVER ALL DOCUMENTS

*Ms. Schurkamp does not aver that the search was reasonably calculated to uncover "all" documents.*

ECF # 31, the declaration of Ms. Schurkamp is several pages long, with 36 numbered paragraphs. Yet, nowhere does she aver that "all" documents were likely to have been found. As noted ICE itself, in its Motion for Summary Judgment, ECF # 30, a search must be calculated to uncover "all" documents, citing *Hart v. FBI*, 1996 WL 403016, *2, 91 F.3d 146 (7th Cir. July 16, 1996). The district court below, citing *Rubman v. U.S. Citizenship & Immigr. Servs.* 800 F.3d 381, 387 (7th Cir. 2015) noted that agency affidavits "must...aver that all files likely to contain responsive records were searched." 24 WL 4433709 at *6.

*Henson v. Dep't of HHS,* 892 F. 3d 868, 875 (7th Cir. 2018) also mandated that agency affidavits "must…aver that all files likely to contain responsive documents were searched." Judge Kennelly quoting *Henson,* stated that the agency declaration "must" include this averment. *Stevens v. United States Department of Health and Human Services,* No. 22-cv-5072, (MFK), 2025 WL 213734, at *5 (N.D.Ill.,Jan. 16, 2025).

Judge Rowland is in accord: "A sufficiently detailed affidavit…avers that all files likely to contain responsive information were searched." *Stevens v. US DHS,* No. 20-cv-2725, 2025 WL 416766, *3 (N.D. Ill. Feb. 6, 2025).

The Fourth Circuit is in accord: An affidavit may be sufficient if it "avers that all files likely to contain responsive materials were searched." *Empower Oversight Whistleblowers & Research v. National Institutes of Health,* 122 F. 4th 92, 103 (4th Cir. 2024)[cleaned up]

District of Columbia courts are in accord: agency declarations must "aver that all files likely to contain responsive materials (if such records exist) were searched." *American Immigration Council v. EOIR,*

No. 23-1952 (RC), 2025 WL 506572, *5 (D.D.C. Feb. 14, 2025)(citing *Oglesby v. Dep't of Army,* 920 F.2d 57, 68 (D.C.Cir. 1990).

*Accord: Leopold v. Department of Defense*, No. 14-30 (RDM) 2024 WL 4332566, *5 (D.D.C., Sept. 27, 2024); *Reporters Committee for Freedom of Press v. Federal Bureau of Investigation*, 877 F.3d 399, 402 (D.C.Cir., 2017); *Shapiro v. United States Department of Justice*, 40 F.4th 609, 612, (D.C. Cir., 2022)

New York is in accord: *Borowski v. U.S. Customs and Border Protection*, 733 F.Supp.3d 171, 181 (W.D.N.Y., 2024)( must search aver that all files likely to contain records were searched).

Ms. Schurkamp does not so aver. Her declaration is insufficient.

*Ms. Schurkamp does not aver and does not explain why no other record system was likely to contain records*

Ms. Schurkamp does not know what record systems were able to be searched, because the Unit Chief did not tell her. There is no evidence that the Unit Chief knew either. The component offices of ERO all keep their records differently. Ms. Schurkamp does not know what systems each has; she does not know one was searched, but another wasn't.

Even though "[t]here is no requirement that an agency search every record system," if an agency does limit its search to certain databases, "[a]t the very least, [the agency is] required to explain in its affidavit that no other record system was likely to produce responsive documents." *Oglesby*, 920 F.2d at 68." *Stevens v. United States Dep't of Health & Human Servs.*, No. 22 C 5072, (Judge Kennelly), 2025 WL 213734, at *5 (N.D. Ill. Jan. 16, 2025).

In *Organized Communities Against Deportations, Immigrant Defense Project v. United States Immigration and Customs Enforcement*, No. 21-cv-2519, 2024 WL 2053123 at*5, (N.D.Ill.,May 8, 2024), the agency was criticized for not explaining why "no other record system" was likely to contain documents.

ICE was criticized yet again for the same thing: in *Louise Trauma Center, LLC v. United States Immigration and Customs Enforcement*, 2025 WL 637369, at *4 (D.D.C., 2025) the agency was faulted for failing to explain "no other record systems are reasonably likely to contain" the responsive records.

Still more cases in accord:

*Aguiar v. Drug Enforcement Administration*, 865 F.3d 730, 739 (D.C.Cir., 2017) (agency must "explain in its affidavit that no other record system was likely to produce responsive documents")

*Urban Air Initiative, Inc. v. Environmental Protection Agency*, 271 F.Supp.3d 241, 256 (D.D.C., 2017) (agency must "aver that no other custodians were likely to possess responsive documents.")

*Ghinis v. United States Citizenship and Immigration Services,* No. 21-cv-554, 2023 WL 2598846 at *4 (M.D.Fla.,Mar. 22, 2023)("USCIS, "at the very least, ... was required to explain in its affidavit [why] no other record system was likely to produce responsive documents.,")

 *Borowski v. U.S. Customs and Border Protection*, 733 F.Supp.3d 171, 182 (W.D.N.Y., 2024)( must explain why the files searched were the "only" ones likely to contain records).

### *ICE did not conduct a "systematic" search*

An agency must be systematic, orderly, and comprehensive in its search. The Declaration of Ms. Schurkamp shows that the search of ICE was not. Agency affidavits must "reflect any systematic approach to document location." *Weisberg v. U.S. Dept. of Justice*, 627 F.2d 365, 371, (D.C.Cir., 1980).

*Accord: Leopold v. Department of Defense*,  No. 14-30 (RDM) 2024 WL 4332566, *3 (D.D.C.,Sept 27,  2024)( affidavits must "reflect a systematic approach.")

*Shteynshlyuger v. Centers for Medicare and Medicaid Services*, 698 F.Supp.3d 82, 108 (D.D.C., 2023)(affidavit must reflect a 'systematic approach to document location. ")

*Ms. Schurkamp does not demonstrate that the search was reasonably calculated to find all files*

Even if Ms. Schurkamp had inserted a boilerplate phrase saying "all" relevant files were searched, an agency must demonstrate that "all" relevant files were in fact searched. "[A]n agency must provide more than conclusory statements that it reviewed all relevant files." *Empower Oversight Whistleblowers & Research v. National Institutes of Health,* 122 F. 4th 92, 103 (4th Cir. 2024)

*Ms. Schurkamp does not explain why many divisions of ICE were not searched.*

Ms. Schurkamp does not explain why Homeland Security Investigations (HSI) and the Office of Principal Legal Advisor (OPLA) were not searched. In a different case, but where the requests were similar to the instant requests, ICE did search HSI and OPLA. *Stevens v. United States Department of Health and Human Services*, No. 22-cv-5072 (MFK) 2025 WL 213734, at *4 (N.D.Ill.,Jan. 16, 2025)

She does not explain why OAQ, OCIO, and SRAD were not searched. She mentions these three divisions in Paragraph 19 of her declaration. She states that ERO "was the office reasonably likely to have records" related to Mr. Soto, Anfinson, and Hurtado, and that

OAQ, OCIO, and SRAD "were the offices reasonably likely to have records related to FOIA Request No. 4.

She suggests that ERO was the office "most" likely to have certain records, and that the other offices were "most" likely to have other records. That may be true, but just because one office has records, that does not mean that other offices do *not* have records. One office might have several records; another office might just have a few. Regardless, an agency must search "all" offices likely to have records. This includes the "most likely" offices, and also other offices. The agency must show that the offices searched were the "only" ones likely to have records. *Borowski v. U.S. Customs and Border Protection*, 733 F.Supp.3d 171, 182 (W.D.N.Y., 2024)

OAO, OCIO, and SRAD have records concerning Request No. 4. Well and good. Do they also have records relevant to the first three requests? They might. Ms. Schurkamp does not tell us. She did not aver in her declaration that "OAO, OCIO, and SRAD did not contain any records concerning the first three requests." She did not aver that ERO was the "only" division to have records.

*Ms. Schurkamp does not explain why several divisions inside ERO were not searched.*

Paragraph 19 of her declaration states that ERO has "seven headquarters and 24 field offices." She does not state if those places were, or were not, searched. She does not state why they were not searched.

She does not state if ERO has any divisions, and if any of them were searched. In *Project South v. ICE,* No. 21-cv-8440, 2024 WL 1116164. (S.D.N.Y. Mar. 12, 2024) we are informed that ERO has at least six divisions, all of which conducted searches.

In *Austin Sanctuary Network v. ICE,* No. 20-cv-1686, 2022 WL 4356732 (S.D.N.Y. Sept. 19, 2022) we are informed that ERO searched within three divisions. Several individuals, whose names are provided, including three Associate Legal Advisors, conducted searches, in different locations.

Ms. Schurkamp does not explain why her declaration, in this court, is so different from the declarations filed in the above courts. Ms. Schurkamp should have explained which divisions inside ERO were searched, and which were not. She should explain why certain divisions were not searched.

## V. THE COURT BELOW ERRED BY FAILING TO FAULT THE DECLARATION OF MS SCHURKAMP

Ms. Scurkamp allowed an unnamed Unit Chief to search as he chose, based on his judgment. There is no statement from the Unit Chief as to how he made his decisions. Therefore, Ms. Schurkamp is in no position to critique what the Chief did. The Chief does not explain why different databases were searched and why others weren't. Neither does Ms. Schurkamp. Where a declaration "does not contain a sufficient explanation of why ICE elected to search certain databases and not others for the requested records," it is inadequate. *Stevens v. United States Department of Health and Human Services*, No. 22-cv-5072 (MFK) 2025 WL 213734, at *4 (N.D.Ill.,Jan. 16, 2025).

*The Schurkamp declaration does not state facts sufficient for Ms. Stevens or the Court to contest its conclusions.*

Ms. Schurkamp does not claim to have any personal knowledge of the various components of ERO. She stated that she sent each request to a Point of Contact,or Unit Chief, inside ERO. No names are supplied. The Point of Contact may have given instructions to certain employees; we are not told. The employees may have searched, attempting to be thorough and methodical; we are not told. The Point of Contact does not

claim he exerted any supervisory control; nor does he say he is confident as to their knowledge and good faith. Unknown employees searched, and gave results to an unnamed Point of Contact. That person gave records to Ms. Schurkamp. She does not claim to have any knowledge about what happened inside ERO. She just rubber-stamped whatever searches and whatever search terms were used.

She does not claim the Point of Contact, or Unit Chief, reviewed the search by the employees. She does not claim she herself reviewed the search.

The Schurkamp declaration contains conclusions, not facts that "afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment." *Stevens v. United States Department of Health and Human Services*, No. 22-cv-5072 (MFK) 2025 WL 213734, at *6 (N.D.Ill.,Jan. 16, 2025).

"ICE's lack of explanation regarding the scope of program offices and corresponding component offices makes it difficult for the Court to assess whether ICE 'used methods reasonably expected to produce the information requested.' *Rubman*, 800 F.3d at 388." *Id.* at *6.

The Schurkamp declaration contains less detail than the Pineiro declaration, that was criticized in *Stevens v. United States Department of Health and Human Services*, No. 22-cv-5072 (MFK) 2025 WL 213734, at *4 (N.D.Ill.,Jan. 16, 2025). Mr. Pineiro provided more details, and searched more locations, than did Ms. Schurkamp. Nonetheless, the Pineiro declaration was deemed insufficient.

## VI. THE COURT BELOW ERRED BY PRESUMING THE AGENCY SEARCHED IN "GOOD FAITH"

The district court below stated: "Courts presume that an agency acted in good faith." 2024 WL 4433709 at *6. Note 10 of the opinion states "Good faith is presumed," citing *Stevens v. U.S. Dep't of State,* 20 F. 4th 337, 342 (7th Cir. 2021). There is indeed precedent for this presumption, but that precedent is flawed.

Courts should not add to a statute. The FOIA statute does not give an agency a presumption of good faith; so, neither should courts. The FOIA statute does give express directions to courts concerning some areas, such as "technical feasibility" and which party has the burden of proof. These express directions indicate that Congress knew how to give accord "presumptions" when it wanted to. If Congress gives a "presumption" expressly in one section, but not in another, courts

should follow the text of the statute and not add to it. *See City of Chicago v. Envtl. Def. Fund*, 511 U.S. 328, 337–38 (1994) (noting presumption that Congress acts intentionally when it includes particular language in one section of a statute but omits it in another)

Accord: *City and Cnty. of San Francisco, California v. Environmental Protection Agency*, 2025 WL 676441, at *2 (U.S.S. Ct., March 4, 2025);

*Consolidation Coal Company v. Director, Office of Workers' Compensation Programs*, No. 24-1329, 2025 WL 519631 (7th Cir. Feb. 18, 2025)

5 U.S.C. § 552(a)(3)(C) provides: "an agency shall make reasonable efforts to search….." The statute does not state: "After the agency conducts a search, the court shall presume the search was done in good faith."

*The Freedom of Information Act directs the court to "accord substantial weight" only to certain aspects of the affidavit of the agency*

5 U.S.C. § 552(a)(4)(B), third sentence, provides:

In addition to any other matters to which a court accords substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B).

The reference to "Paragraph (2)(C)" is a mistake. That paragraph refers to "administrative staff manuals."

§ 552(a)(3)(C)   refers to searching for records, "except when such efforts would significantly interfere with the operation of the agency's automated information system."

"Subsection (b)" refers to the last paragraph of 552(b), after 552(b)(9). That paragraph refers to segregable portions of a record. The last sentence of this paragraph states:

If technically feasible, the amount of the information deleted, and the exemption under which the deletion is made, shall be indicated at the place in the record where such deletion is made.

"Paragraph (3)(B)" refers to **5 U.S.C. § 552(a)(3)(B), which requires the agency to provide the record** in any form or format requested, "if the record is readily reproducible by the agency in that form or format."

The word "technical" appears in 552(a)(2)(E) which discusses "general index." It states:

If technically feasible, the extent of the deletion shall be indicated at the place in the record where the deletion was made.

Congress has thus indicated its awareness that agency computers and systems have technical limitations. If the agency affidavit states that "our computer system has certain limitations," the court is directed to accord "substantial weight" to that statement. Concerning other aspects of agency operations, the court is not so directed. If an agency

makes a statement concerning its search for documents, the court is NOT directed to accorded any special weight to such a statement.

*The Freedom of Information specifically places "the burden on the agency to sustain its action"*

5 U.S.C. § 552(a)(4)(B), second sentence, provides that the court shall determine the matter de novo, "and the burden is on the agency to sustain its action." Congress could have been silent, and have said nothing about the burden of proof. In the ordinary civil case, the plaintiff has the burden of proof. *Herman & MacLean v. Huddleston*, 103 S.Ct. 683, 690, 459 U.S. 375, 387 (U.S. 1983). But, Congress decided to change this rule for FOIA. The defendant-agency has the burden. The agency must show, affirmatively, that its "action" was proper. "Action" includes the search.

Congress did not state: "the burden is on the agency to sustain all of its actions, except for its search."

Congress did not state: "after an agency conducts a search, the burden is on the requester to show the search was inadequate." If a court grants a presumption to the agency concerning its search affidavit, it is shifting the burden of proof to the requester. If the agency gets a presumption, then its "burden" is being lifted and alleviated.

Congress says the "burden" is on the agency. It should stay there. A court should not lighten it.

*The phrase "good faith" does appear in the statute, concerning the payment of fees*

5 U.S.C. § 552(a)(4)(A)(viii) discusses search fees: when must the requester pay such fees?

§ 552(a)(4)(A)(viii)(II)(bb) provides that an agency may charge fees if the requester did not limit his request, after the agency made "3 good-faith attempts" to contact the requester. The phrase "good faith" does not otherwise appear in the statute.

Congress could have said:

"if the agency makes one good faith attempt to search, that is sufficient;"

"agency search affidavits carry the presumption of good faith."

But it didn't.

*Congress knows how to expressly grant presumptions when it wants to*

Congress expressly grants presumptions in statutes, from time to time:

33 U.S.C. § 920 is entitled **Presumptions**. Concerning injured workers, who present a claim for compensation, that section provides:"it shall be presumed" [that certain things are true]

18 U.S.C. § 3142(e)(3) concerns noncitizens who have been detained.

That section provides: "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions…"

11 U.S.C. § 362 involves bankruptcy. 11 U.S.C. § 362(c)(3)(C) provides: "a case is presumptively filed not in bad faith….if…"

30 USC § 921 (c) (4) involves disabled coal miners. That section provides that in certain circumstances, "there shall be a rebuttable presumption that such miner is totally disabled…"

26 U.S.C. § 7502 involves tax filings. § 7502(a) provides that certain filing received after a deadline "will still be treated as timely if…" The statute does not use the word "presumption," but the Fourth Circuit stated: "The statute provides two presumptions that mirror…" *Pond v. United States*, 69 F.4th 155, 162 (4th Cir. 2023)

There is no "presumption" in the FOIA statute. It is error for a court to add one.

*Court decisions giving a presumption of good faith to agency searches are flawed*

The district court below stated that declarations "enjoy a presumption of good faith," citing *Stevens v. U.S. Dep't of State,* 20 F.4th 337, 343 (7th Cir. 2021) and *Rubman v. U.S. Citizenship & Immigr. Servs.*, 800 F.3d 381, 387 (7th Cir. 2015). 2024 WL 4433709, at *6. But those precedents are flawed.

The *Rubman* court, 800 F.3d at 387, stated "Good faith is presumed, *see SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1200

(D.C.Cir.1991)." However, the reasoning of *SafeCard* is not persuasive; therefore *Rubman* should not be followed.

In *SafeCard*, the court stated "In order to establish the adequacy of a search, agency affidavits must be, as the district court correctly noted, "relatively detailed and non-conclusory, and ... submitted in good faith." (quoting *Ground Saucer Watch, Inc. v. CIA,* 692 F.2d 770, 771 (D.C.Cir.1981)). *SafeCard* stated in the above sentence that the agency affidavit must be "submitted" in good faith; it did not say there was a presumption of good faith, in that sentence.

*SafeCard* then added a sentence: "Agency affidavits are accorded a presumption of good faith," citing *Ground Saucer*. But the *Ground Saucer* case is flawed.

*Ground Saucer Watch, Inc. v. C.I.A.*, 692 F.2d 770, 771, (D.C.Cir. 1981) stated that agency affidavits will ordinarily suffice to establish the adequacy of an FOIA search effort "IF" they are " 'relatively detailed' and nonconclusory and… submitted in good faith." (quoting from *Goland v. CIA,* 607 F.2d 339, 352 (D.C.Cir.1978) [emphasis added].

The word "if" is important. "If" submitted in good faith, the affidavit may be adequate. There is no presumption of good faith; the court is directed to determine whether or not there is good faith.

*Ground Saucer* continued. 692 F.2d at 771: "Agency affidavits enjoy a presumption of good faith, which will withstand purely speculative claims about the existence and discoverability of other documents. *See, e.g., Goland v. CIA, supra,* 607 F.2d at 355."

But the *Goland* case is flawed as well.

*Goland v. Central Intelligence Agency*, 607 F.2d 339, 352, (D.C.Cir. 1978) involved an appeal from a district court ruling. The district court found that "the CIA ha(d) made a full search in good faith." The district court did not grant a presumption; it made a determination. The appellate court agreed with that ruling: it stated: "We agree."

The *Goland* court did not say: "there is a presumption of good faith." It said, that in the case before it, the particular search of the agency had been "made" in good faith.

The *Goland* court continued at 352: "The agency's affidavits, naturally, must be 'relatively detailed' and nonconclusory, and must be

submitted in good faith. *If* these requirements are met, the district judge [may award summary judgment to the agency]."[emphasis added]

## CONCLUSION AS TO COURT DECISIONS

*Goland* did not give the agency the presumption of good faith. *Ground Saucer* erred, in stating the contrary, when it cited *Goland*. *Safecard* erred, when it cited *Ground Saucer*. *Rubman* erred in citing *Safeguard*. The district court below erred in citing *Rubman*.

The correct rule is as stated in *Oglesby v. U.S. Department of the Army,* 920 F. 2d 57, 68, (D.C. Cir. 1990): "The agency must *show* it made a good faith effort to conduct a search." [emphasis added]. *Rubman* quoted this sentence with approval, 800 F.3d at 387.

## VII. COURTS SHOULD NOT DEFER TO AGENCY INTERPRETATIONS OF STATUTES

In *Loper Bright Enters. v. Raimondo, Sec'y of Commerce*, 603 U.S. 369, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024) the Court considered an ambiguous statute.

The Court noted that under *Chevron,* courts were to defer to "permissible agency interpretations of the statutes those agencies administer." *Loper Bright*, 144 S. Ct. at 2254 (discussing *Chevron*

*U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

*Loper Bright* overruled *Chevron*. Now, it is courts, not agencies, that rule upon the law. The Court declared that, absent statutory authorization, courts do not defer to the interpretations of the agency. The Court ruled that agencies "have no special competence in resolving statutory ambiguities. Courts do." 603 U.S. at 401-402. Even in technical matters, "Congress expects courts to handle technical statutory questions." *Id.* If there is disagreement, the agency may petition Congress to change the law. Congress is "always free to act by revising the statute."*Id.* at 403. In *Chevron,* the Court made a "justifying presumption." That presumption is "a fiction." *Id.* at 404.

What does the text of a statute say? What does it mean? Courts should rule upon these issues, and not defer to the opinions of the agency. The Court instructs:

> Once more, the basic nature and meaning of a statute does not change when an agency happens to be involved. Nor does it change just because the agency has happened to offer its interpretation through the sort of procedures necessary to obtain deference, or because the other preconditions for *Chevron* happen to be satisfied.

> *Id.* at 408.

A court is not permitted "to fill a perceived hole in the FOIA statute by" granting a benefit to an agency, not in the statute. *Human Rights Defense Center v. U.S. Park Police,* 126 F.4th 708, 718 (D.C. Cir. 2025).

*To presume good faith of an agency affidavit is to defer to an agency*

To grant a presumption to an agency is to defer to an agency. In *Loper Bright Enters. v. Raimondo, Sec'y of Commerce*, 603 U.S. 369, (2024) the Court declared that, absent statutory authorization, courts do not defer to the interpretations of the agency. In the FOIA context, the agency says, "We conducted a search. Having said that, we deserve a presumption that we conducted the search in good faith. That is our interpretation of §552(a)(3)(C), and the court should agree with it."

That interpretation of the agency is wholly outside the text of the statute. The Court should reject it. "Once more, the basic nature and meaning of a statute does not change when an agency happens to be involved."*Loper Bright,* 603 U.S. at 408.

*Loper Bright* was decided in the context of a statute that was ambiguous. Its teachings apply with even more force, in the context of a

statute that is *un*-ambiguous. In the instant case, the statute is 5 U.S.C. 552(a)(3)(C):

An agency "shall make reasonable efforts to search for the records…"

The statute does not include the word "presumption" or the phrase "good faith."

## VIII. COURTS MAY NOT ADD PROVISIONS TO UNAMBIGUOUS STATUTES

The Supreme Court "has explained many times over many years that, when the meaning of the statute's terms is plain, our job is at an end. The people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration." *Bostock v. Clayton County,* 140 S. Ct. 1731, 1749 (2020).

5 U.S.C. § 552(a)(3)C is unambiguous. That statute does not afford any party a presumption. It is wrong of a court to add something that Congress did not.

5 U.S.C. § 552(a)(4)(B) provides that "the burden is on the agency to sustain its action." Granting a presumption, and taking away a burden, is doing what the Supreme Court has cautioned against:

"taking a red pen to the [FOIA] statute" by " 'cutting out some' words and 'pasting in others.' " *Milner v. Dep't of Navy*, 562 U.S. 562, 573, (2011) (quoting *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 845 (D.C. Cir. 2010)).

If Congress enacts a law, then Congress is the one to amend it, not courts, and certainly not agencies.

In *McGirt v. Oklahoma,* 140 S.Ct. 2452 (2020) the Court reversed century-old precedents, concerning whether a State had criminal jurisdiction over certain Creek Indians. There were treaties and statutes enacted in the year 1866, divesting States of jurisdiction. The statutes were not ambiguous. Thus, there "is no need to consult extratextual sources when the meaning of a statute's terms are clear. Nor may extratextual sources overcome those terms." 140 S. Ct. at 2470.

The terms of the FOIA statute are clear. Those terms should be followed, as they are written.

The Fourth Circuit recently cited *McGirt* in a case involving the Anti-Kickback Statute. Finding that statute to be not sufficiently

ambiguous, that court rejected the consideration of extratextual considerations:

> The Supreme Court has consistently pronounced that courts should not use extratextual considerations to circumvent the meaning of an unambiguous statute. *E.g., McGirt v. Oklahoma*, 591 U.S. 894, 915–16, 140 S.Ct. 2452, 207 L.Ed.2d 985 (2020). In light of the above, we conclude that the meaning of the word "induce" in the Anti-Kickback Statute is not sufficiently ambiguous to justify consultation of any such considerations, in contrast to the cases the Coalition cites.

*Pharmaceutical Coalition for Patient Access v. United States*, 126 F.4th 947, 958 (4th Cir. 2025).

### *The "good faith" presumption granted agency affidavits is akin to a baseball game where one team's coach calls the balls and strikes for itself*

The "good faith" presumption granted agency affidavits is akin to a baseball game where one team's coach is deputized to call its own balls and strikes, unless the umpire decides to question the coach's "good faith" and sit behind the catcher, at which point the game will start anew. Such a schema is grossly unfair.

In other words, when the Chicago Cubs are at bat, the umpire calls the balls and strikes. But when the Milwaukee Brewers are at bat, the coach of the Brewers makes the calls. The Brewers, being a self-

respecting team, would be embarrassed to take the field under such rules.

> *The "good faith" presumption granted agency affidavits is akin to a court proceeding where one lawyer, but not both, is permitted to rule upon objections made by the other lawyer*

Assume court rules allowed this: Defendant's lawyer poses a question. Plaintiff's lawyer objects. Defendant's lawyer says: "I posed the question in good faith. Your objection is overruled, unless you can prove I lacked good faith."

In the FOIA context, the agency says, "We searched in good faith. Take our word for it. You can trust us." This is unfair. It is not allowed by the text of the statute.

The FOIA's plain text requires courts to immediately call balls and strikes, not agencies, and especially not agencies that are themselves defendants in litigation. Judges rule on objections, not the lawyers. Parties in court should be treated evenly and fairly. It is not fair for just one party to be granted a presumption.

# CONCLUSION

An agency that uses different search terms for similar requests is not conducting a reasonable search. An agency that searches in different locations, for similar requests, without explanation, is not conducting a reasonable search. Courts should not add a presumption to the FOIA statute, when Congress chose not to. The decision of the court below should be reversed.

Respectfully Submitted,

DAVID L. CLEVELAND
LAW OFFICES OF DAVID CLEVELAND
1220 L Street NW #100
Washington DC 20005
[202] 812-8684
<1949.david@gmail.com>
Counsel    for    Louise    Trauma    Center    LLC-Appellant

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4).

1. Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 9,205 words.

2. The brief has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14 point Century Schoolbook font. As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ David Cleveland
(202) 812-8684

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing with the Clerk of the United States

Court of Appeals for the Seventh Circuit via the CM/ECF system on

March 18, 2025, and served on all counsel of record via the CM/ECF system.

/s/ _____

DAVID CLEVELAND

### RULE 30D CERTIFICATION

Pursuant to Circuit Rule 30(d), appellant certifies that all material required by Circuit Rule 30(a) and (b) are included in the appendix.

/s/ _____

David Cleveland

51

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

JACQUELINE STEVENS,

*Plaintiff-Appellant,*

*v.*

UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,

*Defendants- Appellees.*

On appeal from the United States District Court
for the Northern District of Illinois
Case No. 21-CV-2232

## APPENDIX

DAVID L. CLEVELAND
LAW OFFICES OF DAVID CLEVELAND
1220 L Street NW #100
Washington DC 20005
[202] 812-8684
<1949.david@gmail.com>
Counsel for Jacqueline Stevens, Appellant

# RULE 30d CERTIFICATE

Pursuant to Circuit Rule 30(d), appellant certifies that all material required by Circuit Rule 30(a) and (b) are included in the appendix.

/s/ David L. Cleveland

DAVID L. CLEVELAND

TABLE OF CONTENTS                    Page

Document #50 Memorandum Opinion and Order………………………1

Document #51 Judgment in a Civil Case………………………….41

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JACQUELINE STEVENS, | |
| Plaintiff, | |
| v. | Case No. 21 CV 2232 |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | Hon. Georgia N. Alexakis |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jacqueline Stevens is a political science professor who relies on information retrieved pursuant to the Freedom of Information Act ("FOIA") to conduct immigration research. Over the past decade, Stevens submitted 14 FOIA requests to seven federal agencies seeking data for her research. Dissatisfied with the agencies' responses, she brought this suit challenging the adequacy of the agencies' searches and their withholding of certain records under FOIA's statutory exemptions. The defendant agencies have moved for summary judgment. For the reasons discussed below, the Court grants summary judgment in favor of the agencies.

### BACKGROUND

Stevens is a political science professor and the Director of the Deportation Research Clinic at Northwestern University. [8] ¶ 5. Stevens researches the deportation of U.S. citizens and has published various scholarly articles and books on

the subject. *Id.* ¶¶ 7–12. According to her complaint, she conducts this work "for the purpose of analyzing, reporting, and theorizing the contradictions of nativism and nationalism with the U.S. Constitution and the rule of law." *Id.* ¶ 6.

Stevens' research relies in part on documents she obtains from federal agencies pursuant to FOIA.[1] *See id.* ¶ 14. Between 2015 and 2021, Stevens submitted 14 FOIA requests to seven agencies: (1) U.S. Immigration and Customs Enforcement ("ICE"), (2) U.S. Customs and Border Protection ("CBP"), (3) U.S. Citizenship and Immigration Services ("USCIS"), (4) the Executive Office of Immigration Review ("EOIR"), (5) the U.S. Department of the Navy ("DON"), (6) the U.S. Department of Agriculture ("USDA"), and (7) the U.S. Department of State ("DOS"). *See id.* ¶¶ 19–118. These requests and the agencies' responses are summarized below.

## A. Stevens' FOIA Requests

### 1. ICE

Stevens challenges four FOIA requests she submitted to ICE between 2017 and 2021. First, on March 15, 2017, Stevens submitted a FOIA request to ICE seeking records related to Manuel Valdez Soto. [31] Ex. A ¶ 6. At the time this lawsuit was filed, ICE had not produced records in response to the request. *Id.* A subsequent search yielded one responsive page, which was provided to Stevens on January 7, 2022, subject to withholdings. *Id.* ¶ 22.

---

[1] Stevens has litigated other FOIA disputes in this district. *See, e.g.*, *Stevens v. U.S. Immigr. & Customs Enf't*, 432 F. Supp. 3d 752 (N.D. Ill. 2020); *Stevens v. U.S. Dep't of Homeland Sec., Immigr. & Customs Enf't*, No. 14 C 3305, 2020 WL 1701882, at *1 (N.D. Ill. Apr. 8, 2020); *Stevens v. Broad. Bd. of Governors*, No. 18-CV-5391, 2023 WL 2428839, at *1 (N.D. Ill. Mar. 9, 2023); *Stevens v. U.S. Dep't of Health & Hum. Servs.*, 666 F. Supp. 3d 734 (N.D. Ill. 2023).

Stevens' second request to ICE on November 29, 2018, sought records related to Nathan Anfinson. *Id.* ¶ 4. ICE produced responsive records on December 21, 2018, and Stevens administratively appealed the adequacy of the search. *Id.* After further proceedings, ICE did not locate any additional records. *Id.*

Stevens' third FOIA request to ICE sought records related to Juan Hurtado-Valencia on August 24, 2019. *Id.* ¶ 5. The agency produced responsive records on December 16, 2019, and Stevens administratively appealed the adequacy of the search. *Id.* After Stevens filed this lawsuit, ICE conducted a second search and determined that it was unlikely to possess any additional responsive records. *Id.*

Stevens submitted her final FOIA request to ICE on March 22, 2021. *Id.* ¶ 7. This time, she sought any ICE records that officials used "for creating agency statements of FOIA expenditures and budgets in ICE annual requests to Congress for funding in FOIA operations." [31] ¶ 21. Stevens filed suit before ICE responded to the request. *Id.* Ex. A ¶ 7. Then, on January 7, 2022, ICE released 15 pages and two Excel spreadsheets to Stevens with some portions withheld under FOIA Exemptions 4, 6, 7(C), and 7(E). *Id.* ¶ 23.

In support of the agencies' motion for summary judgment, ICE submitted the 21-page declaration of Lynnea Schurkamp, Deputy FOIA Officer of the ICE FOIA Office. *See generally* [31] Ex. A. The declaration describes ICE's process for responding to FOIA requests, in addition to ICE's specific responses to each of the requests at issue. According to Schurkamp's declaration, when ICE first receives a proper FOIA request, its FOIA office identifies which of its program offices are likely

to possess responsive records. *Id.* ¶ 11. The individuals in those offices are then directed to search the paper and electronic file systems that are, in their best judgment, reasonably likely to contain responsive information. *Id.*

### 2. CBP

Stevens submitted two FOIA requests to CBP. The first, submitted October 22, 2015, sought all CBP records related to Lazaro Palma. [31] Ex. B ¶ 9. In January 2016, CBP informed Stevens that it found no records responsive to the request. *Id.* ¶ 17. Stevens submitted her second request to CBP on January 9, 2019. *Id.* ¶ 20. That request sought records related to Nathan Anfinson. *Id.* CBP did not locate any responsive records for this request and notified Stevens on April 8, 2019. *Id.* ¶ 25. CBP does not have any records indicating Stevens appealed either of its responses to her two requests. *Id.* ¶ 27.

In support of the agencies' motion for summary judgment, CBP submitted the six-page declaration of Patrick Howard, Branch Chief within the FOIA Division of CBP. *See generally* [31] Ex. B. The declaration describes CBP's process for responding to FOIA requests, including CBP's response to each of the requests at issue in this case. *Id.* When it receives a FOIA request, CBP determines which systems, databases, and offices are likely to contain responsive records; it then conducts searches within those systems, databases, and offices. *Id.* ¶ 7.

### 3. USCIS

Stevens challenges four FOIA requests she made to USCIS between 2018 and 2020. Her first request, submitted November 29, 2018, sought "[a]ll system records

4

4

and all other materials in any medium, maintained, received, or distributed by USCIS pertaining to Nathan Anfinson, aka Alfonso Chavez." [31] Ex. C. ¶ 14. In her request, Stevens stated she was "specifically interested in finding a copy of Mr. Anfinson's certificate of citizenship and any underlying documents associated with its application." *Id.*

After searching Anfinson's Alien-File (A-File),[2] USCIS identified 294 pages of responsive records. *Id.* ¶ 17. Of those pages, USCIS produced 206 pages in full and 13 pages in part. *Id.* USCIS also referred 52 pages to another agency for separate processing and withheld 23 pages pursuant to FOIA Exemptions 3, 6, and 7. *Id.* USCIS says Stevens administratively appealed USCIS's withholding of records but did not appeal the adequacy of the response, but Stevens disputes that she failed to appeal the response on adequacy grounds. *Id.* ¶ 18; [37] Stevens Decl. ¶ 40. In July 2019, USCIS released nine more pages of responsive records in full and four pages in part. [31] Ex. C ¶ 19.

Stevens' second FOIA request to USCIS sought records regarding Anfinson's mother, Jovita Elena Chavez. *Id.* ¶ 20. This second request sought records that were previously withheld from USCIS's response to Stevens' first USCIS request pursuant to FOIA Exemption 6. *Id.* USCIS released 13 pages from Anfinson's A-File relating to Chavez on June 6, 2022. *Id.*

Stevens' third USCIS request sought "[a]ll system records and all other materials in any medium received or distributed by USCIS pertaining to Juan

---

[2] According to USCIS, an A-File "serves as the official record of an individual's immigration history." [31] Ex. C ¶ 10.

Guillermo Hurtado Valencia" since 1976. *Id.* ¶ 21. On September 8, 2019, USCIS denied Stevens' request pursuant to FOIA Exemption 6 and informed her of her administrative appeal rights. *Id.* ¶ 22. Stevens did not appeal. *Id.* ¶ 23. Later, in what USCIS describes as a "gesture of good faith" to avoid further litigation, USCIS released 222 pages in full, 64 pages in part, and withheld eight pages. *Id.* ¶ 24. Stevens contends she is unable to access these records because they are password-protected, but USCIS provided evidence that it sent her counsel the password by email the day after it sent her the production. [37] ¶ 53; [40] ¶ 15; [40] Ex. I.

Stevens' fourth and final FOIA request to USCIS came on August 11, 2020, when she requested "[a]ll system records and other materials in any medium created, maintained, or received by USCIS regarding Lorenzo Palma, including but not limited to his N-600 application, including all records for his grandfather, Lazaro Palma." [31] Ex. C ¶ 25. USCIS says it processed her request on April 14, 2021, and sent her an email notification informing her that the records were available to download. *Id.* ¶ 28. According to USCIS, it released 577 pages in full and 109 pages in part but withheld some information pursuant to FOIA Exemptions 5, 6, and 7. *Id.* Stevens did not administratively appeal this response, *id.* ¶ 29, which she insists is because the records were never released to her. [37] ¶¶ 55–56; [40] ¶ 17. USCIS maintains that it emailed Stevens on April 14, 2021, notifying her that the records were ready to download. [31] Ex. C ¶ 28.

In support of the agencies' motion for summary judgment, USCIS submitted the 15-page declaration of Cynthia Munita, Associate Center Director and Chief

6

6

FOIA Officer in the FOIA and Privacy Unit, National Records Center, USCIS. *See generally* [31] Ex. C. The declaration describes USCIS's general process for responding to FOIA requests. *Id.* It also details USCIS's response to each of the requests to USCIS at issue. *Id.*

### 4. EOIR

Stevens submitted her sole FOIA request to EOIR on July 3, 2020, seeking all records pertaining to (1) immigration proceedings where an individual claimed U.S. citizenship, and (2) all cases terminated at any hearing. [31] Ex. D ¶ 21. EOIR extracted data from its Case Access System ("CASE") and produced partial access to the located records. *Id.* ¶ 34. EOIR also provided nine tables defining the various codes in the data. *Id.* Some of the information was withheld pursuant to FOIA Exemptions 5 and 6. *Id.* Stevens administratively appealed the response to the DOJ's Office of Information Policy ("OIP"), which affirmed on partly modified grounds. *Id.* ¶ 39. In June 2021, EOIR issued a supplemental response to Stevens' request, which granted partial access to records that were previously redacted. *Id.* ¶ 41.

To support its motion for summary judgment, EOIR submitted the 19-page declaration of Shelley O'Hara, Attorney Advisor, Office of the General Counsel in the FOIA Program at the DOJ's EOIR. *See generally* [31] Ex. D. The declaration describes EOIR's process for responding to FOIA requests generally and details EOIR's response to the request at issue in this case. *Id.* Like the other agencies discussed so far, EOIR first identifies which program offices are likely to contain responsive records then initiates searches within those program offices. *Id.* at ¶ 6.

7

7

### 5. DON

In March 2021, Stevens submitted a FOIA request to the DON seeking "all system records and other items maintained, produced, or distributed by the Navy and its components on Lawrence E. Bowman." [31] Ex. E ¶ 7. DNS-36 is the DON office responsible for executing its FOIA program. *Id.* ¶ 2. When it received Stevens' request, DNS-36 interpreted the request as one for Bowman's personnel files. *Id.* ¶ 11.

The Navy provided a declaration of Gregory Cason, the Deputy Director of the Chief of Naval Operations FOIA Office for the DON. *See generally* [31] Ex. E. Cason's declaration describes that the National Archives and Record Administration ("NARA")—not the DON—is record custodian for the personnel records of former Navy members such as Bowman. *Id.* ¶ 13. Therefore, the DON no longer has access to Bowman's personnel files. *Id.* ¶ 15. The DON subsequently forwarded Stevens' FOIA request to NARA for further action, and DNS-36 issued a final response to Stevens notifying her of the transfer. *Id.* ¶ 16.

### 6. USDA

On August 14, 2020, Stevens submitted a FOIA request to the USDA seeking "all system records, including but not limited to hiring, payment receipts, immigration documents, and border crossing records, maintained by the Department regarding Lazaro Palma." [31] Ex. F ¶ 6. Stevens sent the request to an outdated USDA email link that the agency can no longer access, and the USDA did not learn about the FOIA request until May 2021, after Stevens filed this suit. *Id.* ¶¶ 5–6. Upon

8

learning of the request, USDA directed several of its divisions to conduct searches, but those searches produced no responsive records.

Supporting the agencies' motion for summary judgment, USDA submitted the declaration of Alexis Graves, Director of the Office of Information Affairs ("OIA") and the FOIA Officer within the USDA. *See generally* [31] Ex. F. The declaration describes the USDA's general search process and the specific process used to identify documents responsive to the request Stevens challenges here. *Id.*

### 7. DOS

Stevens submitted a FOIA request to the DOS on March 18, 2021, seeking "all system records and any other information received, produced, or maintained by the State Department pertaining to Alma Belma Bowman." [31] Ex. G ¶ 5. Though Stevens contends that she did not receive any records, DOS claims it produced six records in full and six records in part pursuant to FOIA Exemption 7(E). [37] ¶ 93; [40] ¶ 16. DOS submitted the 12-page declaration of Susan Weetman, Deputy Director of the Office of Information Programs and Services (IPS) of DOS, to support its motion for summary judgment. *See generally* [31] Ex. G.

### B. Procedural History

Stevens filed this suit on April 26, 2021, challenging the agencies' responses to her various requests. [1]. In doing so, she seeks a declaration that the agencies conduct adequate searches in response to her requests. [8] ¶ 136. She also seeks a declaration that some of the withheld records are not exempt from disclosure under FOIA. *Id.*

In June 2022, the government agencies moved for summary judgment on the grounds that they conducted adequate searches for responsive records and properly withheld certain records that fell under FOIA's statutory exceptions. [29]. Along with their Rule 56.1 Statement of Facts, the agencies submitted the seven declarations described above—one from a FOIA officer at each defendant agency. [31] Ex. A–G. In addition to these declarations, some agencies also submitted *Vaughn* indices[3] describing the records they withheld and the bases for withholding them under FOIA's statutory exemptions. *See, e.g.*, [31] Ex. A, Attach. N.

## LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it affects the substantive outcome of the litigation, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the nonmoving party, *see Scott v. Harris*, 550 U.S. 372, 380 (2007). At summary judgment, we view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

---

[3] Defendants submitted their *Vaughn* indices pursuant to the D.C. Circuit's decision in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

DISCUSSION

FOIA requires federal agencies to "make … records promptly available to any person" who submits a request that "(i) reasonably describes such records and (ii) is made in accordance with [the agency's] published rules." 5 U.S.C. § 552(a)(3)(A). "Disclosure is required unless the requested record is clearly exempted from disclosure by the statute." *Enviro Tech Int'l, Inc. v. U.S. Env't Prot. Agency*, 371 F.3d 370, 374 (7th Cir. 2004).

The agencies move for summary judgment on several grounds. First, they argue that summary judgment is warranted for five of Stevens' 14 requests because she failed to administratively exhaust those claims. Second, they contend they performed adequate searches that were reasonably calculated to produce responsive records. And third, they maintain that any information they withheld was proper under one of FOIA's nine statutory exemptions. The Court addresses each of defendants' arguments in turn. The Court also addresses Stevens' argument that the agencies did not reasonably segregate non-exempt factual material from their withholdings.

## A. Exhaustion

We begin with the threshold issue of exhaustion. A plaintiff must exhaust her administrative remedies under FOIA before seeking judicial review. *Almy v. U.S. Dep't of Just.*, No. 96-1207, 1997 WL 267884, at *3 (7th Cir. 1997); *Stebbins v. National Mut. Ins. Co.*, 757 F.2d 364, 366 (D.C. Cir. 1985); *Brumley v. United States Dep't of Labor*, 767 F.2d 444, 445 (8th Cir. 1985). Here, defendants claim Stevens did

11

11

not administratively appeal either of CBP's responses and three of USCIS's responses (specifically, those related to Nathan Anfinson, Juan Guillermo Hurtado-Valencia, and Lorenzo Palma). Stevens admits she did not administratively appeal either of CBP's responses and USCIS's response related to Hurtado-Valencia. [37] ¶¶ 35, 40, 52. However, she contends that factual disputes exist as to whether she appealed USCIS's responses related to Anfinson and Lorenzo Palma. *Id.* ¶¶ 45, 56.

Upon reviewing the record, the Court agrees with Stevens that there are factual disputes regarding the Anfinson and Lorenzo Palma requests preventing it from granting the agencies summary judgment on those requests. As for the Anfinson request, USCIS contends that Stevens never appealed the adequacy of the search, *see* [31] Ex. C ¶ 18, but Stevens says she did. [37] DSOF ¶ 45; [37] Stevens Decl. ¶ 40. Neither party points to any evidence definitively resolving this dispute. The same is true for the Lorenzo Palma request. USCIS maintains Stevens did not administratively appeal, *see* [31] Ex. C ¶ 29, but Stevens insists her obligation to appeal was never triggered because USCIS never released the records to her. [37] ¶¶ 55–56; [40] ¶ 17.

Given these unresolved factual disputes, the following exhaustion analysis applies only to the three requests in which the parties agree Stevens did not exhaust her remedies: (1) the CBP response related to Lazaro Palma, (2) the CBP response related to Anfinson, and (3) the USCIS response related to Hurtado-Valencia.[4]

---

[4] Even if the Court could resolve these factual disputes, it would make no difference. As discussed later on, USCIS has met its summary-judgment burden to show it performed adequate searches as to both FOIA requests and properly withheld records pursuant to FOIA Exemptions 5 and 6.

12

Stevens first argues that the Court may excuse her failure to exhaust because the exhaustion requirement is not jurisdictional. [36] at 7. But jurisdictional or not, "[e]xhaustion of administrative remedies is a prerequisite to filing a FOIA suit." *Hoeller v. Soc. Sec. Admin.*, 670 F. App'x 413, 414 (7th Cir. 2016); *see also Almy*, 1997 WL 267884, at *3 ("[Plaintiff]'s failure to exhaust his administrative remedies bars judicial review of these claims."). The fact that the administrative exhaustion requirement is not jurisdictional does not somehow make it optional.

Stevens next argues that because exhaustion is typically regarded as an affirmative defense and defendants did not raise it in their answer, defendants cannot now rely on exhaustion at summary judgment. Stevens is correct that exhaustion is usually an affirmative defense that should be raised in a defendant's answer. *See Gray v. United States*, 723 F.3d 795, 799 n.1 (7th Cir. 2013). Even so, "nonexhaustion can be asserted even in a motion for summary judgment if the plaintiff is not harmed by the delay." *Phillips v. Walker*, 443 F. App'x 213, 215 (7th Cir. 2011) (citing *Hess v. Reg-Ellen Mach. Tool Corp. Emp. Stock Ownership Plan*, 502 F.3d 725, 729–30 (7th Cir. 2007)).

On the one hand, Stevens contends she was "severely prejudiced" by not learning about exhaustion until summary judgment, which harmed her "interest in timely access to government records." [36] at 8. On the other hand, defendants say that because Stevens pleaded that she *had* exhausted her remedies in her complaint, there was "no conceivable harm" because she "plainly knew she needed to exhaust administrative remedies." [39] at 7.

13

13

Defendants have the better argument. Stevens clearly understood that exhaustion is required for judicial review in FOIA litigation given that she claimed to have exhausted her remedies in her complaint. [8] ¶¶ 123, 135. Stevens is also challenging 11 other responses to her FOIA requests in which she either did exhaust her remedies or where exhaustion is disputed. Thus, the litigation would have reached this stage even if exhaustion were raised at an earlier point, and Stevens was not unfairly surprised by the belated assertion of an affirmative defense that she clearly anticipated. Stevens is therefore not prejudiced by defendants' failure to raise exhaustion as an affirmative defense earlier in the proceedings.

The Court dismisses Stevens' challenges to CBP's two responses and USCIS's response related to Hurtado-Valencia for failure to exhaust.

### B. Adequacy of Agency Searches

Defendants also move for summary judgment on the grounds that they conducted adequate searches for responsive records. To prevail on summary judgment on this point, an agency "must demonstrate that there is no genuine issue of material fact about the adequacy of its search." *Henson v. Dep't of Health & Hum. Servs.*, 892 F.3d 868, 875 (7th Cir. 2018) (citing *Rubman v. U.S. Citizenship & Immigr. Servs.*, 800 F.3d 381, 387 (7th Cir. 2015)). In doing so, it "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Id.* (quoting *Rubman*, 800 F.3d at 387). Courts presume that an agency acted in good faith, and

good faith "can be reinforced by evidence of the agency's attempts to satisfy the request." *Id.*

In addition, an agency may "offer non-conclusory affidavits" supporting the reasonableness of its search. *Id.* However, those affidavits "must be reasonably detailed, set forth the search terms used in electronic searches and the kind of search performed by the agency, and aver that all files likely to contain responsive documents were searched." *Id.* "Reasonableness is a flexible and context-dependent standard." *Rubman*, 800 F.3d at 387.

"In response to an agency affidavit, the FOIA requester can present countervailing evidence as to the adequacy of the agency's search." *Rubman*, 800 F.3d at 387 (cleaned up). Then, "if a review of the record raises substantial doubt about the adequacy of the search, particularly in view of well defined requests and positive indications of overlooked materials, summary judgment in favor of the agency is inappropriate." *Id.* (cleaned up). If a court finds the agency's search inadequate, the requester "must show some reason to think that the document would have turned up if the agency had looked for it, though since neither the requester nor the court know the content of the agency's records, this is a low bar." *Id.* (cleaned up). The question at summary judgment "is not whether the agency *might* have additional, unidentified responsive documents in its possession," but rather "whether the search itself was performed reasonably and in good faith." *Id.*

15

### 1.      Stevens' Cross-Agency Arguments

FOIA plaintiffs typically offer specific reasons why *each* agency's search was inadequate as to *each* agency response they challenge.[5] Stevens, however, has put forth few arguments tailored to the government's responses to each of her 14 requests. Instead, she primarily makes two overarching arguments that apply across agencies. The Court addresses those two arguments at the outset before addressing the adequacy of each of the 14 searches challenged here.

First, Stevens argues that defendants' responses are inadequate because each agency fails to describe its general file system, which she claims "makes it impossible to determine whether each Defendant has searched the specific databases within each component likely to contain all responsive records." [36] at 3. As Stevens points out, some out-of-circuit district courts have required agencies to respond to FOIA requests with specific details regarding the organization of their file systems so that a requester may have better insight into the adequacy of an agency's search. *See, e.g.*, *El Badrawi v. Dep't of Homeland Sec.*, 583 F. Supp. 2d 285, 300 (D. Conn. 2008) (CBP's failure to "describe the general scheme" of its file system stymied the requester's "ability to advocate his position" and did not meet the Second Circuit's "relatively detailed and nonconclusory" standard).

---

[5] In the context of challenging withholdings under FOIA's statutory exemptions, the Seventh Circuit has specifically cautioned plaintiffs against mounting general objections to agency responses. *See Henson*, 892 F.3d at 876 ("Rather than ask a busy district judge to examine documents … or to parse the *Vaughn* indices as an original matter, it is better to put the burden on the plaintiff to identify with particularity the claims of exemption he was challenging.").

But the Seventh Circuit already declined to impose such a requirement in *Stevens v. United States Department of State*, 20 F.4th 337 (7th Cir. 2021). In that case (which Stevens does not cite), Stevens made the same argument she does here—that the agencies needed to provide specific details about the organization of their file systems. *Id.* at 343. The Circuit rejected it, in part because "FOIA does not compel large, complex agencies … to maintain a specific sort of centralized file system." *Id.* at 343. The Circuit found it sufficient that the DOS "searched shared drives and print servers, the email records of employees in the three sections likely to have worked on matters responsive to the requests, and the ambassador's post-2015 email records." *Id.* It also credited the DOS's statement that officers made choices about what to search based on their "familiarity with the holdings of the Department's records systems." *Id.*

Like in *Stevens*, here each defendant agency declared how it located which files to search, often indicating that they used their familiarity with the systems to identify search locations. For example, ICE's declaration notes that ICE program offices are directed to search files "which in their judgment, based on their knowledge of the way they routinely keep records, would reasonably likely be the files to contain responsive documents." [31] Ex. A ¶ 11. Likewise, CBP's declaration avers that its search locations are based on, among other things, "the FOIA Division's familiarity with the types and locations of the records at issue[] and discussions with knowledgeable Agency personnel." *Id.* Ex. B ¶ 7. These declarations enjoy a

17

17

presumption of good faith and are sufficient under the Seventh Circuit's reasoning in *Stevens*, 20 F.4th at 342.

Stevens' second broad argument is that, except for USDA, defendants' searches were inadequate because their declarations do not specify the search terms they used or "the process of using them." [36] at 6. But even a cursory review of defendants' declarations reveals the false nature of this statement. *See, e.g.*, [31] Ex. G ¶ 24 (listing the various combinations of the subject's name that DOS used to search its records); [31] Ex. F ¶ 8 (USDA performed primary search using "Palma" and "Lazaro" and a secondary search using his social security number). Nonetheless, for completeness (and because the burden is on the agencies as the parties moving for summary judgment, *see Henson*, 892 F.3d at 875), the Court addresses the adequacy of each response to Stevens' 14 FOIA requests below. To the extent Stevens challenges the omission of search terms in a particular agency's response, the Court addresses the agencies' disclosure of search terms throughout.[6]

### 2. Individual Agency Responses

#### a. ICE

---

[6] Stevens makes two additional arguments that do not warrant extended discussion. First, she claims that "*post hoc* rationalizations are not properly credited in deferential review." [36] at 6. But Stevens only provides this conclusory statement, and she does not attempt to apply the argument to any specific agency explanation. *See generally id.* Second, she generally argues that the agencies "failed to complete good faith searches" and "are now attempting [to] prevent this Court from performing a judicial review of their actions." *Id.* But again, Stevens has provided the Court no reason to question the agencies' good faith, and the idea that agencies enjoy a presumption of good faith in FOIA litigation is "well settled." *Stevens*, 20 F.4th at 342. The Court finds neither argument persuasive.

Turning to ICE's responses to Stevens' FOIA requests, the Court starts with her March 15, 2017, request for all records involving Manuel Valdez Soto. According to the Schurkamp declaration, ICE determined that the Enforcement and Removal Office ("ERO") was most likely to contain records related to Soto. [31] Ex. A ¶ 19. Then, ERO's Information Discovery Unit ("IDU") conducted a routine records search for responsive records in the Immigration and Enforcement Operational Records System Alien Removal Module ("EARM").[7] *Id.* ¶ 22. The declaration specifies that ICE conducted both searches using Soto's name and alien number. *Id.* Given these facts, the Court finds ICE's response to the March 15, 2017, request meets the adequate search standard. The declaration is "reasonably detailed, set[s] forth the search terms used in electronic searches and the kind of search performed by the agency, and aver[s] that all files likely to contain responsive documents were searched." *Henson*, 892 F.3d at 875.

The same is true as to Stevens' November 29, 2018, request to ICE regarding Nathan Anfinson. Like the previous request, ICE determined that the ERO was most likely to contain records related to Anfinson. [31] Ex. A ¶ 19. The ERO searched for responsive records in EARM using Anfinson's name, date of birth, country of birth, alias, and alien number. *Id.* ¶ 20. In addition to EARM, the declaration also states that the ERO searched the Central Index System ("CIS"),[8] a database developed by ICE's predecessor agency, Immigration and Naturalization Service. *Id.* ¶ 20. This is

---

[7] EARM is the system used to book, detain, and remove encountered noncitizens.
[8] CIS is a database that contains information on the status of applicants or petitioners seeking immigration benefits.

enough for the Court to conclude the agency made a "good faith effort to conduct a search for the requested records." *Henson*, 892 F.3d at 875.

Up next is Stevens' August 24, 2019, request related to Juan Hurtado-Valencia. Once again, ICE determined that the ERO was most likely to contain any records related to Hurtado-Valencia. [31] Ex. A ¶ 19. ICE's declaration describes that ERO's IDU conducted a routine records search, which, like the other searches, used Hurtado-Valencia's name, date of birth, country of birth, alias, and alien number. *Id.* ¶ 21. ICE also says it searched for responsive records in the Enforcement Integrated Database Arrest Guide for Law Enforcement ("EAGLE"),[9] Outlook, EARM, and CIS. *Id.* After ICE's FOIA Office asked ERO to conduct a second search based on Stevens' FOIA request, the ERO reviewed the past search and concluded it was unlikely to possess any additional responsive records. *Id.* As with the previous two ICE searches, this Court concludes that ICE's search for Hurtado-Valencia's records was also sufficient under FOIA.

Finally, the Court addresses Stevens' March 22, 2021, request for records used to create agency statements of FOIA expenditures and budgets in ICE funding requests to Congress. For this request, ICE determined that the Office of Acquisition Management ("OAQ"), Office of the Chief Information Officer ("OCIO"), and Strategic Resourcing Alignment Division ("SRAD") were the offices likely to have responsive records. *Id.* ¶ 19. Per Schurkamp's declaration, ICE's OAQ subsequently searched

---

[9] EAGLE is the booking application used to process biometric and biographical information of individuals arrested for violating immigration laws.

Outlook by business name, contract number, and point of contact's name. *Id.* ¶ 23. OCIO, for its part, determined that it would not have responsive documents because it could only search email accounts ending in "ice.dhs.gov," and the FOIA request related to records not ending in "ice.dhs.gov." *Id.* Meanwhile, STRAD searched the Federal Financial Management System ("FFMS"), which is ICE's workflow management and financial transaction system. ICE retrieved two responsive Excel spreadsheets from FFMS and disclosed them to Stevens. *Id.* In light of these details and ICE's description of its search terms, the Court is not persuaded by any of Stevens' arguments that ICE failed to conduct a reasonable search as to her fourth FOIA request.[10]

### b. CBP

The Court similarly concludes CBP's searches were reasonable and conducted in good faith based on the information provided in Howard's declaration.

As for Stevens' October 22, 2015, FOIA request, the declaration describes that CBP determined the TECS platform was the only system within CBP that might contain responsive records. [31] Ex. B. ¶ 14.[11] CBP searched that database for any

---

[10] Stevens also argues that ICE's searches were inadequate because the agency searched in certain databases for some individuals and not others. [36] at 3–4. But we must take in good faith ICE's declaration that its component offices decided which databases to search "based on their knowledge of the way they routinely keep records." [31] Ex. A ¶ 11; *Stevens*, 20 F.4th at 342 ("Good faith is presumed."). The question at summary judgment is not based on the uniformity of the searches or "whether the agency *might* have additional, unidentified responsive documents in its possession." *Rubman*, 800 F.3d at 387. Instead, the Court "need only determine whether the search itself was performed reasonably and in good faith." *Id.* ICE has met this burden.

[11] TECS is an information-sharing platform that allows users to access various databases and stores information to support law enforcement "lookouts," border screening, and inspection reporting. [31] Ex. B ¶ 15.

crossing records, secondary inspections, and border encounter responsive records. *Id.* ¶ 16. The declaration specifies that CBP used the subject's name and date of birth as search terms. *Id.* This description was sufficient to carry CBP's summary judgment burden on Stevens' first request to CBP.

Howard's declaration as to Stevens' January 9, 2019, FOIA request provides a similar description. It describes that CBP's FOIA staff determined TECS and the "E3/Enforce systems" were the only CBP systems that could contain responsive information. *Id.* ¶¶ 22, 24. Then, it describes the search terms it used to search these systems, specifically the subject's "name, date of birth, and Alien File (A-File) Number." *Id.* ¶ 24. Stevens has offered no reason to doubt the reasonableness of CBP's efforts. In the Court's view, this information is sufficient to conclude that CBP conducted an adequate search pursuant to FOIA.

### c. USCIS

Next, the Court turns to USCIS's responses to Stevens' four FOIA requests, beginning with the November 29, 2018, request related to Nathan Anfinson. Based on the information contained in the request (for example, Stevens' interest in finding Anfinson's certificate of citizenship and any underlying documents associated with its application), USCIS's FOIA staff determined that Stevens sought documents contained in Anfinson's A-File. [31] Ex. C ¶ 15. Munita's declaration describes that A-Files are retrievable by reference to an individual's name and alien number. *Id.* ¶ 11. Then, the declaration continues, to locate an individual's records within the A-File, a FOIA staff member runs a computerized database search in DHS's RAILS

22

22

system using the individual's alien number. *Id.* ¶ 12. Finally, according to the declaration, once the records in Stevens' case were processed, FOIA staff determined that the search was reasonably calculated to locate responsive documents within USCIS control. *Id.* ¶ 13. Because the declaration is "reasonably detailed" and sets forth both the search terms and type of search, the Court concludes USCIS's search was adequate as to the November 29, 2018, request. *Henson*, 892 F.3d at 875. Stevens offers no convincing reason to conclude otherwise.

Stevens' September 2019 request for records related to Jovita Elena Chavez is unique in that those records did not arise from a *new* search. Instead, Stevens discovered the information related to Chavez (Anfinson's mother) when USCIS withheld certain records in response to Stevens' request for Anfinson's records. [31] Ex. C ¶ 20. Once USCIS received Chavez's consent to disclose the records, USCIS released 13 additional pages from Anfinson's A-File. *Id.* Munita's declaration describes this process in sufficient detail for the Court to conclude USCIS acted reasonably pursuant to its FOIA obligations. Again, Stevens provides no tailored argument to convince it otherwise.

USCIS's responses to Stevens' latter two requests regarding Juan Valencia and Lazaro Palma also meet the FOIA standard for an adequate search. Because those requests both sought information that would be contained in an individual's A-File, USCIS followed the same procedure described above for the Anfinson search. *Id.* Ex. C ¶¶ 12–13, [31] ¶¶ 53, 55. This description already has proven sufficient for the

23

Court to conclude those searches were reasonably calculated to find responsive records pursuant to FOIA.

### d. EOIR

Stevens' July 3, 2020, request to EOIR sought (1) records regarding immigration proceedings with adjournments referencing claims of U.S. citizenship, and (2) records regarding cases terminated "at any hearing." [31] ¶ 62. This request is unique from the other requests discussed thus far. Instead of performing a traditional "search" using key terms, EOIR's Planning, Analysis, and Statistics Division extracted two datasets from its CASE system that were responsive to Stevens' request. [31] Ex. D ¶ 23. Although EOIR conducted no "search" in the traditional sense, O'Hara's declaration provides intricate details regarding the dataset contents, how they were generated, and how they aligned with the data Stevens requested. *Id.* ¶¶ 23–33. When some aspect of Stevens' request was not captured within the CASE system, the declaration also describes why that information was omitted from the agency's response. *See, e.g.*, *id.* ¶¶ 15, 30.

As defendants put it, EOIR simply "extracted the data that Stevens requested." [39] at 4. Stevens, for her part, has provided no reason to question the adequacy of EOIR's efforts. As a result, the Court concludes EOIR has met its summary judgment burden to show a "good faith effort to conduct a search for the requested records." *Henson*, 892 F.3d at 875.

### e. DON

24

Stevens' challenge to the DON's search merits only a brief discussion. When the DON received Stevens' request, it interpreted the request as one for the subject's personnel files. [31] Ex. E ¶ 11. And, as described in the Cason declaration, the DON does not keep the personnel files of former Navy members—that responsibility lies with NARA. *Id.* ¶ 13. As a result, the DON forwarded Stevens' FOIA request to NARA for further action and notified Stevens of the transfer. *Id.* ¶ 16. The DON never searched its own records because it reasonably concluded the records Stevens requested were kept elsewhere. Thus, there is no DON search for Stevens to challenge as inadequate, and the Court has not identified a DON-specific argument in Stevens' opposition to defendants' summary judgment motion.

### f. USDA

Next is Stevens' August 14, 2020, request to the USDA. Stevens does not challenge the USDA's description of search terms, and for good reason. The Graves declaration describes in detail the search process used in each of the USDA divisions suspected of having responsive documents. [31] Ex. F ¶¶ 7–10. It also outlines the specific search terms used within those divisions. *Id.* For example, it describes that, within the USDA's National Finance Center, the Internal Audit and Compliance Group searched its system using the terms "Palma" and "Lazaro," then it performed a secondary search using Lazaro's social security number. *Id.* ¶ 8. Likewise, the Graves declaration says that the Farm Production and Conservation Business Center's Stakeholder Relations Branch searched its Service Center Information Management System using the key terms "Palma" and "Lazaro." *Id.* ¶ 9. Finally, for

each division within the USDA tagged as likely to have responsive records, the declaration states that responsive records were not likely to be found outside the systems searched. *Id.* ¶¶ 8–10.

The details in the USDA declaration leave the Court with no doubt as to the adequacy of the agency's search.

### g. DOS

The final response at issue is DOS's response to Stevens' March 18, 2021, request for information pertaining to Alma Belma Bowman. According to Weetman's declaration, the Bureau of Consular Affairs ("CA"), PIERS (a database of all U.S. passport information), DOS's electronic records archive (eRecords), and NARA's Washington National Records Center were deemed likely to have documents responsive to Stevens' request. [31] Ex. G ¶ 12.

Weetman's declaration describes in significant detail the search process within each of these DOS divisions. For example, a CA information specialist ordered a search of CA's Vital Records section using the search terms "Alma Bella Bowman, Alma Belma Bowman, her date of birth, and place of birth; Alma Mitchell, her date of birth, and place of birth; Alma Sorrells, her date of birth, and place of birth." *Id.* ¶ 17. CA also searched PIERS and its Consular Consolidated Database (CCD) using similar terms. *Id.* ¶¶ 18–22. Finally, DOS searched its eRecords archive using the search terms "Alma Bowman," "Lolita Catarugan Bowman," "Lolita" and "Bowman," "Alma Sorrells," "Alma Mitchell," and "Alma Belma Bowman." *Id.* ¶ 24. These

26

descriptions are plenty to convince the Court that the DOS conducted a reasonable search for summary judgment purposes.

### C. Exemptions

Stevens also challenges the agencies' responses to her FOIA requests on the grounds that they improperly withheld materials pursuant to FOIA's statutory exemptions. Although FOIA's "basic policy" skews in favor of disclosure, any agency may withhold records if the information falls under one of the nine statutory exemptions outlined in 5 U.S.C. § 552(b)(1)–(9). *See also Enviro Tech*, 371 F.3d at 374. When an individual requests information, "[d]isclosure is required unless the requested record is clearly exempted from disclosure by the statute." *Id.* Although the exemptions "are intended to have meaningful reach and application," *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989), courts are to construe FOIA exemptions "narrowly in favor of disclosure.'" *Patterson v. I.R.S.*, 56 F.3d 832, 835 (7th Cir. 1995) (quoting *U.S. Dep't of Just. v. Landano*, 508 U.S. 165, 181 (1993)).

FOIA grants courts the power to enjoin agencies from withholding agency records and to order the production of any records an agency has improperly withheld. 5 U.S.C. § 552(a)(4)(B). Although the agency sustains the burden of maintaining the action, district courts "shall accord substantial weight to an affidavit of an agency concerning the agency's determination" related to the technical feasibility and reproducibility of agency records. *Id.* To determine whether the government has met its burden, the court conducts a *de novo* review of the record. *Id.* The government is entitled to summary judgment "only if the agency affidavits describe the documents

withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed." *Patterson*, 56 F.3d at 836 (cleaned up).

Here, Stevens challenges defendants' withholding of materials under five of FOIA's statutory exemptions. The Court considers each contention in turn.

### 1. Exemption 3

Stevens first challenges USCIS's decision to withhold records pursuant to FOIA's third exemption. That exemption applies to documents "specifically exempted from disclosure by statute … provided that such statute … requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue … or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).

Here, USCIS originally withheld information under Exemption 3 because it was exempted from disclosure by the Immigration and Nationality Act, 8 U.S.C. § 1202(f). However, in its *Vaughn* index, USCIS indicated that it would withdraw its reliance on that exception "[u]pon closer examination." [31] Ex. C, Stevens Juan Hurtado-Valencia *Vaughn* index at 7. Because USCIS agreed to disclose these records, Stevens does not challenge reliance on the exemption. Instead, she argues that "the records have not been reprocessed and released to [her]." [36] at 9. But Stevens does not offer any evidence this is true (for example, a sworn declaration) and instead relies on a conclusory statement in her summary judgment response. Regardless, to the extent Stevens still believes she has not received these records, the Court directs the parties to meet and agree on a new method of transmitting the

records that USCIS has now agreed to disclose. This production hiccup, however, provides no basis to deny defendants' motion for summary judgment.

### 2.    Exemption 4

Stevens next challenges ICE's withholding under FOIA's fourth exemption, which covers matters that are "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Information is "confidential" where it is "both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 440 (2019).

Here, ICE withheld contract pricing information from an order for services and supplies, which included information such as discount terms, the total amount of the contract, unit price, and quantity. [31] ¶ 27; [31] Ex. A, Attach. N, Entry 2. Stevens mounts two attacks on ICE's use of Exemption 4. First, she argues that the records were "generated by the federal government itself" and are therefore not from "a person" as § 552(b)(4) requires. [36] at 10. But there are at least two parties to every contract. At some point, ICE would have received the withheld information from the other party to the contract (i.e., the requisite "person"). This inference is especially reasonable where the agency withheld "pricing information"; that is precisely the type of information that the government would have solicited rather than generated.

Second, Stevens argues that the *Vaughn* index does not provide enough information to ascertain whether Exemption 4 has been properly applied. But the Court has reviewed the relevant entry in the *Vaughn* index (and the index more

29

generally) and finds that the description is sufficiently specific to counter Stevens' contention. It describes the withholding as a partial redaction on an order for services or supplies and describes the redacted information as "discount terms, contract total, contract grand total, unit price, amount, fast redaction annual licenses amount, [and] total amount of award." [31] Ex. A, Attach. N, Entry 2. This level of detail is more than enough to permit the conclusion that the redacted records were appropriately withheld pursuant to Exemption 4.

Stevens' third argument is that "old prime labor contracts are neither confidential nor privileged; they pertain to the historical working of the government and should be subject to disclosure." [36] at 10. Stevens offers no case law to support this conclusory statement. In any case, the pertinent question to Exemption 4 is whether the information is "customarily and actually treated as private." *Food Mktg. Inst.*, 588 U.S. at 440. According to ICE's *Vaughn* index, the information is confidential because its disclosure would be "likely to cause substantial harm to the competitive position of the person who submitted the information" and is the "kind of information that the provider would not customarily make available to the public." [31] Ex. A, Attach. N, Entry 2. Based on this description, the Court concludes the information withheld under Exemption 4 was "logically within the domain of the exemption claimed." *Patterson*, 56 F.3d at 836 (cleaned up); *see also Stevens*, 2023 WL 2428839, at *8 (federal agency properly invoked Exemption 4 to withhold confidential and proprietary pricing information because it would cause "substantial competitive harm to the firm that owns the information") (quoting *Henson*, 892 F.3d at 877).

### 3.    Exemption 5

FOIA's fifth exemption permits agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption "appl[ies] to documents that would be privileged in the government's litigation against a private party." *Stevens*, 20 F.4th at 345 (citing *Enviro Tech*, 371 F.3d at 374). For example, the exemption applies to information protected by the attorney-client privilege and work-product privilege. *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021). It also protects information covered by the deliberative process privilege—in other words, information "reflecting the deliberative or policy-making processes of governmental agencies." *Enviro Tech*, 371 F.3d at 374. The policy "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Id.* (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001)).

Here, in response to Stevens' August 2020 request for records related to Lorenzo Palma, USCIS withheld legal advice an ICE attorney provided to assist in determining a citizenship issue. [31] ¶ 58. EOIR also withheld bond records for citizenship adjournments and terminations. *Id.* Ex. D EOIR *Vaughn* index at 1–2.

First, Stevens argues that documents were inappropriately withheld under Exemption 5 because they are not "memorandums or letters" within the meaning of § 552(b)(5). But, in making this argument, Stevens does not point to any specific

31

31

document she claims is not a memorandum or letter, despite having access to the *Vaughn* indices that would reflect that information. And to the extent she argues that a document such as an email cannot also be a memorandum or letter, she does not provide any authority that supports such a proposition.[12] In fact, Seventh Circuit case law suggests documents such as emails *can* be withheld pursuant to Exemption 5. *See, e.g.*, *Stevens*, 20 F.4th at 345 (DOS properly withheld cables and emails pursuant to Exemption 5).

Stevens next argues that USCIS cannot withhold an ICE attorney's communications related to the citizenship issue because rendering or receiving legal advice was not the primary purpose of the communications. But USCIS's *Vaughn* index indicates that the agency invoked the exception because "[t]he ICE attorney was providing legal advice to assist the client in determining and deciding issue of citizenship." [31] Ex. C, Palma-Rodriguez Lorenzo *Vaughn* index at 16–17. Stevens offers no reason to doubt the accuracy of this statement. Stevens also contends that the documents cannot be privileged because they were not kept confidential. But, like before, she provides no evidence (besides a conclusory statement) that the information was ever provided to a third party.

---

[12] Stevens cites the Ninth Circuit's statement in *Rojas v. Federal Aviation Administration* that if "Congress intended Exemption 5 to extend to all 'agency records,' it would have used that term." 927 F.3d 1046, 1055 (9th Cir. 2019). But that statement was made in analyzing whether third-party consultants can constitute "intra-agency" communications under Exemption 5. It does not stand for the proposition that emails or other forms of communication cannot be memos or letters under § 552(b)(5). Even if it did, the Ninth Circuit overturned that portion of the panel's opinion when it reviewed the decision *en banc. See Rojas v. Fed. Aviation Admin.*, 989 F.3d 666, 674 (9th Cir. 2021) (en banc).

Next, Stevens contends that none of the records USCIS withheld are covered by the deliberative process privilege because they do not pertain to the formation or adoption of an official agency policy. But the Seventh Circuit has rejected the argument that "a document is only predecisional if it pertains 'to the formation or adoption of an official agency policy' or 'adjudication'." *Stevens*, 20 F.4th at 345 ("A document is predecisional if it is generated before an agency's final decision on a matter, whether that matter is official or not."). In any case, USCIS appropriately withheld the records because they fall under the attorney-client privilege. *Sierra Club*, 592 U.S. at 267 (listing attorney-client privilege and deliberative process privilege as separate ways to invoke § 552(b)(5)). USCIS need not also show that the deliberative process privilege applies.

Lastly, Stevens argues that the descriptions in ICE's *Vaughn* index are too vague. But ICE did not withhold documents pursuant to Exemption 5. To the extent she means to argue that USCIS or EOIR's *Vaughn* indices are overly vague, she has provided no reasoning to support such an argument, and the Court's review of those indices does not yield support for Stevens' characterization. The Court concludes the agencies properly withheld information pursuant to Exemption 5.

### 4. Exemption 6

FOIA's sixth exemption protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Whether an invasion of privacy is "clearly unwarranted" involves "a balancing of interests between the protection of an

33

individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information." *U.S. Dep't of Def. Dep't of Mil. Affs. v. Fed. Lab. Rels. Auth.*, 964 F.2d 26, 29 (D.C. Cir. 1992) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976)). "[T]he only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding of the operations or activities of the government.'" *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 495 (1994) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 775 (1989)).

Here, ICE and USCIS say they withheld certain names, identification codes, phone numbers, and signatures of federal law enforcement officers and other government employees, as well as personally identifiable information of third parties. [31] ¶ 28. EOIR also withheld certain personally identifiable information from the datasets it produced as part of its search. [31] Ex. D ¶¶ 34, 41.

Stevens challenges EOIR's explanation regarding Exemption 6 as too conclusory because it does not describe the nature of the personally identifiable information involved. But defendants' reply brief provides a commonsense explanation: the text in its *Vaughn* index was cut off when converted to a PDF from Microsoft Excel, and the complete *Vaughn* index (which has been included among the materials filed with this Court, *see* [40] Ex. K) explains that EOIR withheld "Alien names, Alien numbers, phone numbers and information of third parties." [39] at 12–

34

13. The Court credits EOIR's explanation in good faith and concludes that the new explanation for the redacted information is sufficient.

Stevens also maintains that ICE unnecessarily withheld recipient email addresses because the names of public officials are a matter of public record. Stevens is correct that, under 5 C.F.R. § 293.311, the names and titles of federal employees must be available to the public. But based on the record before this Court, the names and titles of public employees here do not appear in isolation. Instead, ICE contends (and Stevens does not dispute) that the redacted information ties the names of individuals to *certain actions*—a form of information not deemed public by federal regulation. [39] at 13.

In any case, it is difficult for the Court to assess whether ICE's redactions were appropriate where Stevens generally attacks the withholdings without pointing to any specifically problematic redactions. The Court is also not persuaded that, under Supreme Court precedent, the individually identifying information Stevens seeks will contribute "to public understanding of the operations or activities of the government." *Fed. Lab. Rels. Auth.*, 510 U.S. at 495. Based on the information presented before it, the Court concludes ICE properly withheld information pursuant to Exemption 6.

### 5. Exemption 7

Finally, Stevens challenges the agencies' use of Exemption 7, which applies to "records or information compiled for law enforcement purposes" under certain circumstances. 5 U.S.C. § 552(b)(7). Relevant here, Exemption 7(C) protects law enforcement records if their disclosure "could reasonably be expected to constitute an

35

unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). Meanwhile, Exemption 7(E) protects information that "could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." *Id.* § 552(b)(7)(E). Here, ICE says it withheld information under Exemption 7(C) to protect the names, identification codes, phone numbers, and signatures of federal law enforcement officers and other government employees. [31] Ex. A ¶ 30. Meanwhile, DOS asserts that it redacted material under Exemption 7(E) that would have disclosed the types of information it considers when investigating passport fraud. *Id.* Ex. G ¶¶ 30–31.

Stevens first challenges ICE's withholdings under Exemption 7 on the grounds that it applied the exemption in "a categorical fashion based on the type of information it was redacting without connecting it [to] a specific incident" or explaining "that it relates to techniques still in use by ICE and/or State Department." [36] at 15. The Court disagrees with Stevens' characterization of ICE's *Vaughn* index. In at least one instance, ICE justifies a withholding under Exemption 7 because the withheld information "contains internal law enforcement planning relating to an *ongoing* criminal investigation," including "surveillance planning and techniques and prosecution strategy and deliberations." [31] Ex. A, Attach. N, Entry 4 (emphasis added). In any case, the Court concludes that ICE's method of disclosure was

reasonable under the circumstances. That ICE provided the same reason, across multiple documents, to justify withholding information under Exemption 7 does not suggest the withholding was invalid. It simply reflects that the withheld information implicated the same set of interests covered by Exemption 7. And other than quibbling over the "categorical" way in which the redactions were made, Stevens does not offer any reason why the information itself was improperly withheld pursuant to § 552(b)(7).

Second, Stevens challenges DOS's withholdings under Exemption 7 on the grounds that DOS is not a law enforcement agency. But § 552(b)(7) only requires that the withheld records be compiled "for law enforcement *purposes*." (emphasis added). Here, DOS withheld a form it used to track and report passport fraud. [31] Ex. G ¶ 30. It also redacted certain information it collected related to Alma Bowman's passport fraud investigation. *Id.* ¶ 31. These documents were clearly collected for "law enforcement purposes" under § 552(b)(7). That DOS may not be a traditional law enforcement agency does not warrant denying summary judgment on Exemption 7.

Third, Stevens challenges DOS's withholdings on the grounds that the agency failed to submit a *Vaughn* index describing the withholdings. But as defendants point out, there is no requirement that an agency submit a *Vaughn* index. *See Int'l Union of Elevator Constructors Loc. 2 v. U.S. Dep't of Lab.*, 747 F. Supp. 2d 976, 980 (N.D. Ill. 2010). Instead, an agency can satisfy its burden by including details about its redactions in an affidavit filed along with its motion for summary judgment. *See Stevens v. BBG*, 2021 U.S. Dist. LEXIS 60846 (N.D. Ill. Mar. 30, 2021) (a "sufficiently

37

37

detailed affidavit" can serve the same function as a *Vaughn* index). Here, DOS included information about its withholdings within the Weetman declaration. [31] Ex. G ¶¶ 30–31. Stevens does not contend that this information is insufficiently detailed, and this Court's review suggests the opposite. The declaration describes in detail what was withheld (information about how the agency investigates passport fraud) and why (because disclosure could help individuals circumvent the DOS's passport enforcement efforts). *Id.* The failure to submit a *Vaughn* index alone is not dispositive.

In sum, the Court finds that defendants properly withheld materials pursuant to FOIA Exemptions 3, 4, 5, 6, and 7.

### D. Segregation

Finally, Stevens argues that the agencies failed to meet their segregation obligations. FOIA requires that "[a]ny reasonably segregable portion of a record" be severed and disclosed after redacting the exempt portions of the record. *See* 5 U.S.C. § 552(b); *see also Env't Prot. Agency v. Mink*, 410 U.S. 73, 91 (1973) (agencies are required to segregate out and release any "purely factual material … in a form that is severable without compromising the private remainder of the documents"). Here, Stevens broadly contends that defendants did not segregate non-exempt factual material from their withholdings.

Once again, Stevens has not identified any specific agency documents she believes were not reasonably segregated. And, without being directed toward a specific document or set of documents, the Court will not search through each

disclosed withholding on its own to substantiate Stevens' claim. *See Stevens v. U.S. Immigr. & Customs Nef's*, 432 F. Supp. 3d 752, 764 (N.D. Ill. 2020) (dismissing Stevens' segregation argument for failure to point the court toward specific emails).

What is more, even a cursory review of the *Vaughn* indices suggests that the agencies *did* segregate data where possible. For example, ICE's *Vaughn* index describes that the agency only partially redacted certain names, addresses, and telephone numbers from EARM Case Comments instead of withholding the comments altogether. [31] Ex. A, Attach. N, Entry 1. The same goes for the contract details withheld from the order for services and supplies discussed above. *Id.* at Entry 2. Likewise, EOIR's *Vaughn* index describes that the agency redacted certain fields but nonetheless produced the other parts of the spreadsheet responsive to Stevens' request. [31] Ex. D EOIR *Vaughn* index at 1–2. Stevens also maintains that all but one of the agency declarations fails to discuss segregation, *see* [36] at 15, but that contention is plainly incorrect. *See, e.g.*, [31] ¶ 96; [31] Ex. A ¶¶ 17, 18, 32–33; [31] Ex. C ¶¶ 44–47.

Based on the arguments presented, the Court finds the agencies properly met their § 552(b) obligation to segregate.

## CONCLUSION

For the foregoing reasons, the Court grants the agencies' motion for summary judgment as to each of the 14 challenged FOIA requests.

As specifically noted above, to the extent Stevens still contends she does not have access to certain USCIS documents and where USCIS has already agreed to

produce documents, the Court orders the parties to meet and agree on alternative methods of transmitting the responsive documents. *See supra* at 28–29.

ENTERED:  10/7/24

_____

Georgia N. Alexakis

United States District Court Judge

40

40

ILND 450 (Rev. 04/29/2016) - Judgment in a Civil Action

## IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Jacqueline Stevens,

Plaintiff(s),

v.

U.S. Department of Agriculture, U.S. Department
of Justice, U.S. Immigration and Customs
Enforcement, U.S. Customs and Border Protection,
USCIS, Executive Office of Immigration Review,
U.S. Navy, Department of State, USDA ,

Defendant(s).

Case No.  21-cv-2232
Judge Georgia N. Alexakis

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐ in favor of plaintiff(s)
and against defendant(s)
in the amount of $          ,

which ☐ includes       pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.
Plaintiff(s) shall recover costs from defendant(s).

☒ in favor of defendant(s) ICE, CBP, USCIS, EOIR, DON, DOS, USDA, & DOJ
and against plaintiff(s) Jacqueline Stevens

.

Defendant(s) shall recover costs from plaintiff(s).

☐ other:

This action was (check one):

☐ tried by a jury with Judge        presiding, and the jury has rendered a verdict.
☐ tried by Judge       without a jury and the above decision was reached.
☒ decided by Judge Georgia N. Alexakis on a motion for summary judgment dated 10/7/24.

Date:  10/7/2024                    Thomas G. Bruton, Clerk of Court

                                   Carmen Acevedo , Deputy Clerk

41